1       plans. . . . How many people REALLY make full use of the

2       plan, except annual check up, shots, emergencies? So you

3       either pay ridiculous fees for the services you DO use, or

4       you pay a seemingly less ridiculous fee for services you

5       don't fully use. The fact that they can discount everything

6       with the wellness plan should show how much they

7       overcharge in the first place."

8    c)  "There have been multiple mistakes in the three years I

9       have had a wellness contract with Banfield, but this was the

10      final straw. I am done!! I cancelled my contract for both

11      my dogs with Banfield Pet Hospital, but of course they

12      would not give me any sort of refund on the remaining time

13      on the contract."

14   d)  ". . .Banfield[] inflates their prices so they 'appear' to give

15      you a discount because you are on their wellness plan. I

16      have checked with other vets to verify this happens. Their

17      prices are out of line with others in the same business."

18   e)  "…They recommended an extraction and dental cleaning. I

19      could not afford the procedure, so they suggested their

20      'wellness plan' to bring the cost down to something I could

21      afford right away. They told me it was urgent to get him in

22      right away so they 'fit him into their schedule'the next day.

23      Of course when they had him under anesthesia, they called

24      to tell me he needed two more teeth extracted at the cost of

25      another $150. The original tooth fell out on the table, but I

26      was still charged for that extraction."

27

28

1        f)  "[The wellness program] is a complete waste of money.

2           They encourage you to come in and then overcharge

3           everything that's not on the plan. So not worth it!"

4        g)  "I ended up having to call the Banfield Complaint Center,

5           and was pretty much told that since I signed something, I

6           was stuck in the plan.  I explained to them that I was never

7           told anything about it being renewed and that I was able to

8           cancel this. . . . Also, they up-charge like a car dealership."

9        h)  "[E]very visit I never feel confident in their advice or

10         prescription, mostly they seem to have an agenda that I

11         leave owing them money in some way since I'm on the

12         Wellness Plan and not paying that day.  Getting me to buy

13         additional services is obviously a high priority."

14        i)  "Please, I am trying to make others aware to NOT purchase

15         the Banfield Animal Hospital Plan! I took my new puppy

16         into their hospital for his first visit to make sure he was

17         healthy and to begin his shots. They sold me their wellness

18         plan, and I signed up because I trusted they would deliver

19         those services. Unfortunately, that HAS NOT happened.

20         On both the 2nd and 3rd visits, they called me on my cell

21         to explain they had emergencies and were running terribly

22         behind. Both times, appointments were made as per the

23         wellness plan, but I ONLY saw a vet ONE time, and that

24         was on the 1st visit, when the plan was sold to me. I paid

25         based on the plan's breakdown of visits or 'exams'. The

26         only services performed were shots."

27

28

j) "If your pet needs medications, the prices they charge are inflated by 500%. I told them that I would get one of the prescriptions they wanted to charge me $53 for at my pharmacy. I paid $12 at the pharmacy. This is an ongoing practice of theirs."

k) "I bought Wellness plan for my elderly dog. I specifically asked if I could cancel at any time and the answer was yes. This is totally untrue, as they will continue to charge you until the year is up. They try to tell you that the expenses you racked up for services are far more than what you owe, so you will have to pay the difference. . . . The amounts that they charge for their services are far and above the normal rates than a neighborhood vet charges. How do I know this? My dog went to a neighborhood vet for the first 11 years of his life, as does his sister."

l) "The wellness plans are a total sham - every visit, I've had to fight to get the vet to perform the most routine tests that are promised in the plan, and even then, they find loopholes to charge you... They charge several times the regular rate for meds, etc. so you end up paying for what you would have if you'd gone to a reputable vet."

m) "Bottom line, charges that may be discounted as part of the Wellness Plan and what and how they tack on fees is misleading, and frankly bad business. Did you know that if you bring your pet in for a free teeth cleaning, the automatic blood work that they do is only covered if in fact they actually do the teeth cleaning. If the blood work shows

1   additional potential health issues and the teeth cleaning is

2   then suggested to not be done (i.e. anesthesia may be

3   risky), the automatic blood work charges will be charged to

4   you. Even when asked what my charges were in the

5   morning when I dropped my cat off, no mention of this was

6   made. Evidently, it is in the fine print of what I signed as I

7   rushed off to work in the early morning. Regardless, the

8   principle of the matter is that it is misleading. The free teeth

9   cleaning cost me $176.00."

10  n) "I went in with my dog and waited for over an hour. He

11  was supposed to be seen by the vet for his wellness visit.

12  They were supposed to take his blood and do other tests for

13  his checkup. The nurse saw him, took his temperature, etc.

14  She tried to take his blood, and she was not able to do so. I

15  waited in the office for over an hour and the vet never saw

16  my dog. . .They charged my account for tests, and for a vet

17  visit. The vet never saw my dog, only the girl (nurse)."

18  o) "We currently have a Banfield wellness plan for our four

19  pets. We moved to Maine and Banfield does not provide

20  services in Maine. However, they will not allow us to

21  cancel the plan (even though two are new and two were

22  just renewed). We have to keep paying for four wellness

23  plans and we cannot even use their facilities. Also, one of

24  our pets passed away the day after Christmas. We had a

25  wellness plan for this beloved pet which we only renewed a

26  couple of months ago so we have barely benefited from the

27  plan. Unfortunately, Banfield will not cancel the plan so we

28

have to continue paying for the plan for a pet that is no longer living and Banfield can no longer treat."

p) "Be careful before you purchase this plan. They will claim it saves you money over time, but it does not. First of all, they mark up their medications about 400% to make up for their free unlimited office visits. You can get the same RX at Walmart for one-tenth of the price. Secondly, they tell you they will give you a 10% discount on all other services; however, my son who doesn't have the plan took his dog in and paid the same price I did for the same service."

q) "After my dog got heartworms, my vet suggested this plan. I ended up still having to pay over $1,000 for treatment even though they swore I was getting a deal. After all the treatments and they said my dog was clear, she died a week later. I called to cancel the plan and you have to pay the full 12 months so I'm stuck paying 6 more months for a dog I don't have."

r) "I called Banfield corporate to report what I felt was bad business practices and complaining about this plan they sell. I also spoke with the division that sold this plan and asked about the diagnostic blood work. They tried to tell me it was only once, period. Nothing in the brochure and contract state that. And the items that are listed that are limited all specify time limits."

s) "I signed up for the $28 puppy plan and it's a waste. I tried to get my puppy sprayed twice and they keep giving reasons why they can't."

t) "I have four dogs, all on the Wellness Scams. Every time I would go there, it was a constant push to try to sell me unnecessary care above and beyond the already over-inflated prices on their plans. For example, somehow, the only dog whose blood work was not covered on a particular visit would be the one that they would have a problem that needed to be looked at. Banfield is like an assembly line with the only goal they have is to take more money out of your pocket."

u) "[] I called Banfield and they tell me that I owe them $400 for the rest of the plan. I argued with the woman and she said this isn't a insurance plan but a payment plan. She said they have already done over $800 work on the dog. They only gave her shots when I was there, 2 each time for a total of 6. I said what were they giving her, gold in the shots? This company is a total rip-off and total swindlers."

v) "Finally, I managed to cancel the plans for my animals after 2 years of attempts! Even though I had the Banfield plans in place, I receive better service and it was still cheaper to take my animals to a local private vet practice."

w) "I was sold 3 plans for my animals. After I was sold the plans, I was told that they could not clean my 2 cats' teeth because of a heart murmur that was determined at the initial visit. The reason I signed them up for the plans was

because they deceived me and talked me into buying 2

dental plans for my cats."

   x)  "The Wellness Plan is a joke! The service is subpar! The

staff is rude! The access to care is usually unavailable or

hard to get! It's nothing like the promises that are made, it's

more like a bait and switch once you've signed up!"

   y)  "They will reel you in with "wellness plans". If only the

value was truly there! . . . When the time comes to count on

them though, the additional charges will start appearing.

'This' is not covered, 'that' is not covered."

85.    Banfield engages in unfair upselling practices when, for example, it recommends medications during a covered visit, charges grossly inflated prices for those medications, and fails to make clear that the OWP client may purchase those medications elsewhere (and at a fraction of the price).

86.    Banfield also engages in unfair upselling when it sells additional products and/or services during a covered office visit, but neglects to inform the client in advance about the additional charges to be assessed, or when it tacks on unjustified add-on fees and/or markups.

**D.   Plaintiff's History of OWP Purchases.**

87.    In 1997, Plaintiff had two older Golden Retrievers named "Alex" & "Chelsea" and a grey tabby kitten named "Tony".   Plaintiff and his wife took Alex and Chelsea to a Banfield outlet (called VetSmart at the time) inside a PetSmart store in the Anaheim Hills, California area.   Plaintiff was first introduced to Banfield's Optimum Wellness Plans at that time.

88.    The OWP brochures advertised significant savings on routine services as well as discounts on other services and products, while proactively maintaining the health of your pets.  Plaintiff purchased OWPs for Alex, Chelsea, and Tony in

light of the prospect of substantial savings on preventive pet care.  Alex and Chelsea passed away in 2001.

89.    In or about 1999-2000, Plaintiff and his wife adopted a young female calico cat named "Ginger" and purchased an OWP for her.   That same year, they also adopted a stray orange tabby named "Wiley Coyote".  Plaintiff also purchased an OWP for Wiley.

90.    In the 2001-2002 timeframe, Plaintiff and his wife adopted two six week old Golden Retrievers puppies about a year apart from each other named Jake and Liberty.  Plaintiff purchased an OWP for each puppy.

91.    From Plaintiff's perspective, since 2007, Plaintiff has observed considerable negative changes at Banfield in terms of staffing, operations, and customer support.  As time went by, Plaintiff also believes that the better veterinarians at his local Banfield would be gone within 6 months.

92.    Around the time that Liberty was 5-6 years old, she developed a cancerous tumor.  Veterinary Surgical Specialists (VCG) in Tustin, CA removed the tumor.  Plaintiff had to take Liberty to VCG versus Banfield because ultra sound is an important method of detecting the return of cancer cells and Banfield did not have ultra sound.  Subsequently, Plaintiff paid out of pocket for regular visits to VCG.  Moreover, vaccines were not appropriate for Liberty, since they would have an adverse impact on a dog's immune system.

93.    In or about 2007, Plaintiff took Wiley to the Yorba Regional Animal Hospital ("Y.R.A.H.") located next to Plaintiff's local Banfield in the City of Yorba Linda, California (the Banfield outlet was closed).  Y.R.A.H. conducted a course of tests and found a tumor located on the outside of Wiley's heart.  The tumor was at an advanced stage and had gone undetected for some time.

94.    In August 2009, Plaintiff received a letter from Banfield informing him of the upcoming OWP renewal that would take effect in September 2009.  The letter

- 38 -

1    identified the core benefits of OWPs including essential preventive pet care that

2    provides cost savings of more than 50%.

3        95.    In January 2010, Plaintiff and his wife rescued a cat named "Emily".

4    They promptly signed her up to the OWP.  The fee that day for signing her up was a

5    $54.95 one-time Membership fee and a $22.95 monthly fee.  That day, Banfield

6    performed a comprehensive feline exam (which included an Ophthalmic exam and

7    Otoscopic exam).  In March of 2010, Plaintiff took Emily in for an office visit.

8    Banfield ran a number of tests and then recommended that Plaintiff take her to an

9    eye specialist.  The Banfield invoice for that appointment included a line item for

10   Ophthalmic Ointment and two other line items labeled "Professional Service Fee –

11   Per Minute".  The two "Professional Service Fee" line items totaled $222.87 and the

12   total bill was $334.49.  When Plaintiff took Emily to the eye specialist, he learned

13   that her retinas were detached and she was effectively blind and no amount of eye

14   ointment or "Professional Service Fee – Per Minute" was going to change that fact.

15       96.    In December 2011, Plaintiff and his wife rescued a kitten named

16   "Petey", and Plaintiff purchased an OWP for him.  At this point in time, Plaintiff had

17   six (6) pets in total each on a Banfield OWP.

18       97.    In August 2012, Jake became very sick and Plaintiff brought him into

19   Banfield for an office visit.  Banfield ran a number of diagnostic tests and x-rays.

20   The Banfield vets indicated that there appeared to be something around his chest on

21   the x-ray, but they couldn't identify what it was.   Again, Plaintiff needed to take his

22   pet to another pet hospital where they had ultra sound equipment.

23       98.    Plaintiff took Jake to Southern California Veterinary Specialty Hospital,

24   Irvine, CA.   They began another round of tests (including ultra sound) and

25   determined that he was hemorrhaging near his heart.  By the end of the week, Jake's

26   condition deteriorated, and he had to be euthanized.  At the time, Banfield staff

27   assured Plaintiff that they would take care of the termination of the OWP as to Jake.

28

99.    Within days, Liberty got sick too, and Plaintiff immediately brought her into Banfield.  Again, Banfield ran a number of diagnostic tests and x-ray.   Banfield confirmed there was some type of mass around her abdomen, but again, directed Plaintiff to go to another hospital for additional diagnosis.   Liberty's condition continued to rapidly decline as Plaintiff took her to Yorba Regional Animal Hospital. The vet at Yorba Regional promptly determined that she was hemorrhaging internally.  As with Jake only days before, Liberty needed to be euthanized.

100.    Plaintiff's neighbor's vet had diagnosed rat poisoning as the root cause of injury to the neighbor's dog who had died during the same week that both Jake and Liberty had died. A few weeks later, Plaintiff's wife found remains of a green brick of rat poison while gardening in their backyard.

101.    In or about August 2012, Plaintiff and his wife adopted a couple of Golden Retriever puppies named "Wilson" & "Annie".  Plaintiff purchased OWPs for both of them.

102.    Banfield initially continued to bill Plaintiff for monthly charges on the OWP for Jake and the OWP for Liberty after each dog had died.

103.    After speaking with Plaintiff, Banfield corporate personnel stopped charging Plaintiff for additional monthly fees for Liberty.  Nevertheless, Banfield continued to charge Plaintiff for the remainder of an entire year of monthly fees for Jake.

104.    Plaintiff renewed each of the OWPs that he purchased each year during his pets' lives.  He believed that—under the OWPs that he purchased—he was providing essential health care for his pets while achieving substantial cost savings from Banfield.

105.    Over the course of his pets' lives, Plaintiff paid out of pocket for numerous blood and diagnostic tests, x-rays, medications, dental cleaning, and more.

1    One or more of the Banfield vets pushed Plaintiff to pay for diagnostic tests for

2    which there was no apparent need and/or value.

3
     **E.     Plaintiff and Members of the Class Suffered Injury as a Result of
4            Banfield's Misconduct.**

5        106.   Based on Banfield's deceptive marketing and unfair sales tactics,

6    Plaintiff purchased Banfield OWPs, and he paid for pet care products and services

7    thereunder believing that he would receive the savings, discounts, products and

8    services as represented by Banfield.

9        107.   The OWPs did not conform, however, to Banfield's representations

10   because, in fact, purchase of the pet care products and services thereunder did not

11   provide the promised minimum savings and discounts.  Furthermore, Banfield

12   induced Plaintiff and other OWP clients to purchase additional pet care products and

13   services that were not needed and/or that were provided at inflated prices.

14       108.   Plaintiff and members of the Class paid more for Banfield's OWPs, and

15   for the pet care products and services purchased thereunder, than they otherwise

16   would have paid had they not been misled by Banfield's false and misleading

17   representations and material omissions, and/or had they not been induced by

18   Banfield's unfair sales tactics to purchase additional pet care products and services.

19       109.   For these reasons, Banfield's OWPs and the pet care products and

20   services purchased thereunder were worth less to Plaintiff and members of the Class

21   than what they otherwise would have paid.

22       110.   Based on the false statements, misrepresentations, material omissions,

23   and unfair sales tactics described herein, Plaintiff and members of the Class were

24   induced to and did purchase OWPs, and additional pet care products and services

25   thereunder, instead of saving their money or purchasing competing pet care products

26   or services.

27

28

111.   Instead of receiving OWPs that provided the promised minimum savings on comprehensive preventive pet care, Plaintiff and members of the Class received restrictive plans that did not provide the advertised savings and discounts, that induced clients to pay for unprovided and/or unneeded pet care products and services, and that locked them into costly, year-long, automatically-renewing, purchasing commitments without full and adequate disclosure or relevant terms.

112.   Plaintiff and members of the Class lost money as a result of Banfield's deception and unfair business practices insofar as: (i) OWP clients were denied savings and discounts advertised under the plans; (ii) OWP clients were induced to pay additional monies for unprovided and/or unneeded pet care products or services; and (iii) OWP clients incurred other unjustified tack-on charges (e.g., hospitalization charges) in addition to OWP membership fees and monthly payments.

113.   Plaintiff and members of the Class altered their position to their detriment and suffered injuries that include overpayments of initial OWP membership fees, overpayments of monthly OWP fees, losses of advertised minimum savings and discounts, payments for unprovided and/or unneeded pet care products or services, and supplemental fees, markups, charges, and penalties assessed on top of the OWP membership and monthly fees.

## V.    CLASS ACTION ALLEGATIONS

114.   Plaintiff seeks certification of a Class defined as follows:

> All consumers nationwide who: (i) purchased or renewed any Optimum Wellness Plan from a Banfield Pet Hospital (ii) for personal, family, or household purposes (iii) at any time during the four year period preceding the filing of the original complaint ("The Class"). Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

- 42 -

115.   Plaintiff also seeks certification of a Subclass defined as follows:

> All consumers in California who: (i) purchased or renewed any Optimum Wellness Plan from a Banfield Pet Hospital (ii) for personal, family, or household purposes (iii) at any time during the four year period preceding the filing of the original complaint ("The Subclass"). Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

116.   Plaintiff does not know the exact number of Class members at the present time.  However, due to the nature of the trade and commerce involved, there appear to be thousands of Class members and thousands of Subclass members, such that joinder of all Class members and/or Subclass members is impracticable.

117.   The Class and Subclass are ascertainable through Defendant's business records and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions.

118.   There are questions of law and fact common to the Class and Subclass. Defendant's marketing practices were supplied uniformly to Class and Subclass members who were similarly affected by having purchased Banfield OWPs and other per care products or services under the OWPs.

119.   Plaintiff asserts claims that are typical of the Class and Subclass. Plaintiff and all Class and Subclass members have been subjected to the same wrongful conduct because they all have purchased and/or renewed OWPs, which Banfield misrepresented as providing minimum savings and discounts and which Banfield used to upsell additional pet care products and services.  As a result, and like other members of the Class and Subclass, Plaintiff purchased and/or renewed OWPs from Banfield, and the pet care products and services sold thereunder, which

he otherwise would not have paid for, and/or for which he otherwise would have

paid less.

120.   Plaintiff will fairly and adequately represent and protect the interests of

the Class and Subclass.  Plaintiff is represented by counsel competent and

experienced in both consumer protection and class action litigation.

121.   Class certification is appropriate because Defendant has acted on

grounds that apply generally to the Class and Subclass, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the Class or Subclass as

a whole.

122.   Class certification is also appropriate because common questions of law

and fact substantially predominate over any questions that may affect only individual

members of the Class or Subclass, including, *inter alia*, the following:

    a.   Whether Defendant misrepresented or omitted material facts in connection with the marketing and sale of OWPs;

    b.   Whether Defendant represented that its OWPs have characteristics, benefits, uses or qualities that they do not have;

    c.   Whether Defendant made misleading statements of fact about the amount of savings and discounts associated with its OWPs and/or the pet care products and services sold thereunder;

    d.   Whether Defendant represented that consumers will receive savings or discounts for purchasing OWPs, or the products or services thereunder, when the advertised savings were contingent on events to occur subsequent to the purchase;

    e.   Whether Defendant's misrepresentations and/or nondisclosures would be material to a reasonable consumer;

    f.   Whether Defendant's misrepresentations and/or nondisclosures were likely to deceive a reasonable consumer in violation of the UCL;

    g.   Whether Defendant's misrepresentations and/or nondisclosures constitute an unlawful business practice in violation of the UCL;

- 44 -

h.  Whether Defendant's misrepresentations and/or nondisclosures constitute an unfair business practice in violation of the UCL;

i.  Whether Defendant's upselling of additional pet care products and services constitutes an unfair, unlawful, or deceptive practice under the UCL;

j.  Whether Defendant intentionally misrepresented the savings and discounts available under the OWPs;

k.  Whether Defendant knowingly failed to disclose material facts limiting the scope and/or value of its OWPs;

l.  Whether the challenged practices harmed Plaintiff and members of the Class or Subclass; and

m.  Whether Plaintiff and members of the Class or Subclass are entitled to damages, restitution, equitable relief, and/or injunctive relief.

123.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members and/or Sublass members is impracticable.  Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

124.  The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

# VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FALSE ADVERTSING LAW
(CAL. BUS. & PROF CODE §§ 17500, *et seq.*)

125.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

126.   California Business & Professions Code §§ 17500, *et. seq.* (the "FAL") broadly proscribes deceptive advertising in this State.  Section 17500 makes it unlawful for any corporation intending to sell products or perform services to make any statement in advertising those products or services concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or not to sell those products or services as advertised at the price stated therein, or as so advertised.

127.   In this case, Banfield has violated Sections 17500.  Banfield is a corporation that intends to and does sell pet care products and perform pet care services for California consumers.  Banfield makes statements in advertising those products and services concerning the savings and discounts provided to clients who pay for Banfield's OWPs, and the nature of the pet care products and services that Banfield provides under the OWPs.  These statements are made both orally by Banfield representatives and in writing in print brochures and price sheets disseminated at Banfield outlets in PetSmart stores, and invoices and correspondence disseminated to Banfield clients.  The statements are false or misleading, and are known, or by the exercise of reasonable care should be known, to be false or misleading, by Banfield.  Indeed, Plaintiff is informed and believes that Banfield is aware that OWP clients do not in fact receive the promised savings and discounts on pet care products and services under the OWPs.

128.   To the contrary, the promised savings and discounts are based not only on preventive pet care services actually paid for, but also on the OWP client's purchase of pet care products and services from Banfield that are not provided and/or not needed.  The savings and discounts do not accumulate, as Banfield represents, on a per-visit or per-month basis.  Moreover, the underlying retail pricing scheme is inflated and packed with additional fees and charges that OWP clients should not have incurred.  In short, Banfield does not actually sell the OWPs, or the pet care products and services thereunder, as advertised or at the advertised prices.

129.   In addition, Section 17509 of the FAL provides that any advertisement soliciting the purchase of a service that requires, as a condition of sale, the purchase of a different service shall conspicuously disclose in the advertisement the price of all those services.  Banfield purportedly conditions cancellation of the OWP on payment of retail charges for each individual service used to the date of cancellation (unless the client pays for a full year of OWP services).  Banfield has violated Section 17509 by failing to disclose in its advertisements the retail price of each individual service covered by the OWP.

130.   Moreover, Banfield purportedly requires, as a condition of sale of OWPs with dental options, that clients pay for any abnormal blood tests prior to dental cleanings.  Once again, Banfield has violated Section 17509 by failing to disclose in its advertisements the price for the blood tests.

131.   Section 17535 effectively provides that the Court may enjoin any corporation or other person who violates the FAL, and may make such orders or judgments as may be necessary to prevent the use of such practices, or which may be necessary to restore to any person in interest any money or property which may have been acquired by means of such practices.  An FAL claim may be prosecuted by any person who has suffered injury in fact and has lost money or property as a result of a

1    violation of the FAL. The action may be prosecuted on a representative basis when it

2    meets the traditional class action requirements.

3        132.   Plaintiff and the Class and Subclass have suffered injury in fact and lost

4    money or property as a result of Banfield's violations of the FAL because:  (a) they

5    paid more for OWPs due to the false representations and material omissions about

6    OWP savings, discounts, products, and services; (b) they would not have purchased

7    the OWPs on the same terms, and/or all of the pet care products and services

8    thereunder, if the true facts concerning the OWPs and Banfield's unfair sales tactics

9    had been known; and (c) the OWPs did not provide the advertised minimum savings,

10   discounts and benefits that were promised.

11       133.   As a result of these violations, Banfield has caused and continues to

12   cause damage to Plaintiff and members of the Class and Subclass and, if not stopped,

13   will continue to harm them.

14       134.   Plaintiff and members of the Class and Subclass request that this Court

15   enter such orders or judgments as may be necessary to restore to any person in

16   interest any money which may have been acquired by means of such deceptive

17   advertising.

18   
**SECOND CAUSE OF ACTION**

19   
**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**
20   (CAL. CIV. CODE § 1750, *et seq.*)

21       135.   Plaintiff realleges and incorporates by reference all paragraphs alleged

22   herein.

23       136.   Defendant Banfield Pet Hospital is a "person" under Cal. Civ. Code

24   § 1761(c).

25       137.   Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d), who

26   purchased an OWP sold by Banfield for preventive pet care services and purchased

27   pet care products and services from Banfield subject to OWP savings and discounts.

28

138.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or *services* have sponsorship, approval, *characteristic*, ingredients, *uses, benefits*, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Banfield violated this provision by misrepresenting that its OWPs provided savings and discounts on pet care products and services, which savings and discounts were not provided or were materially overstated. Banfield also violated this provision by using OWPs as a tool for upselling costly additional pet care products and services.

139.   Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised." Banfield violated this provision by intentionally and deceptively advertising that its OWPs provided savings and discounts on pet care products and services, which savings and discounts were not provided or were materially overstated.

140.   Cal. Civ. Code § 1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Banfield violated this provision by overstating the amount of savings and discounts, if any, on pet care products and services under its OWPs.

141.   Cal. Civ. Code § 1770(a)(17) prohibits "[r]epresenting that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction." Banfield violated this provision by representing that OWP purchasers will receive savings or discounts, when the earning of the savings and discounts were contingent on events to occur subsequent to the OWP purchase. Among other things, the advertised savings and discounts were contingent on the consumer's non-cancellation of the OWP for a full year, use of all bundled OWP products and services, and normal blood test results prior to dental cleanings.

142.   Plaintiff and the Class suffered lost money or property as a result of these violations because: (a) they paid more for OWPs due to the misrepresentations about OWP savings, discounts, products, and services; (b) they would not have purchased the OWPs on the same terms and/or all of the pet care products and services thereunder if the true facts concerning the OWPs and Banfield's unfair sales tactics had been known; and (c) the OWPs did not provide the advertised savings, discounts, and benefits that were promised.

143.   As a result of these violations, Banfield has caused and continues to cause actual injury to Plaintiff and members of the Class and Subclass and, if not stopped, will continue to harm them.

144.   In accordance with Cal. Civ. Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Banfield's violations of the CLRA.

145.   While Plaintiff does not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

146.   Plaintiff includes an affidavit with this Complaint reflecting that venue in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code § 1780(d) in federal court.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

147.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

148.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice." Banfield has engaged in unlawful, and unfair, and fraudulent business acts and practices in violation of the UCL.

149.   Banfield has violated the unlawful prong by its violations of the FAL and CLRA described above.

150.   Banfield has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint—including false advertising and unfair and coercive upselling—offend established public policy.  The harm that these acts and practices cause to pet care consumers greatly outweighs any benefits associated with them.  Banfield's conduct has also impaired competition within the market for preventive pet care services and has stopped Plaintiff from making fully informed decisions about whether to purchase, renew, and retain OWPs, whether to purchase additional pet care products and services as an OWP client, and/or what price to pay for such products and services.

151.   Banfield has violated the fraudulent prong of section 17200 because its misrepresentations and material omissions about OWP savings, discounts, products and services, and the unfair sales tactics used to sell additional pet care products and services under OWPs (as set forth in this Complaint), were likely to deceive a reasonable consumer and the true facts would be material to a reasonable consumer.

152.   Plaintiff has suffered injury in fact, including the loss of money or property, as a result of Banfield's unlawful, unfair, and/or deceptive practices.  As set forth more fully above, in purchasing and renewing Banfield OWPs and in purchasing pet care products and services thereunder, Plaintiff relied on the misrepresentations and omissions of Banfield.  Had he known that Banfield OWPs do not provide the advertised savings and discounts, or that he would be induced to purchase additional pet care products and services as an OWP client and via unfair sales tactics, he would not have purchased and/or renewed the OWPs that he purchased and renewed, and/or he would not have paid as much for the OWPs or the products and services thereunder.

1   153.   All of the wrongful conduct alleged herein occurred, and continues to

2   occur, in the conduct of Banfield's business.  Banfield's wrongful conduct is part of

3   a pattern or generalized course of conduct that is still perpetuated and repeated

4   throughout the State of California and nationwide.

5   154.   Plaintiff requests that this Court enter such orders or judgments as may

6   be necessary to enjoin Banfield from continuing its unlawful, deceptive, and/or

7   unfair business practices and to restore to Plaintiff and members of the Class any

8   money that Banfield acquired by unfair competition, as provided in Cal. Bus. & Prof.

9   Code § 17203, and for such other relief set forth below.

10   **FOURTH CAUSE OF ACTION**

11   **FRAUD BY CONCEALMENT**

12   155.   Plaintiff realleges and incorporates by reference all paragraphs alleged

13   herein.

14   156.   As set forth above, Banfield concealed material facts concerning the

15   true nature, pricing, and value of its OWPs and the pet care products and services

16   sold thereunder, the nature of the tactics used to sell OWPs, and the true amount of

17   limited savings and discounts, if any, available under the OWPs (as set forth more

18   fully above).  Banfield had a duty to make these disclosures based on its superior

19   knowledge of its products, services, and pricing scheme, its status as a pet care

20   hospital, and its affirmative misrepresentations about the advertised savings,

21   discounts, products, and services.

22   157.   Banfield concealed these material facts, in whole or in part, with the

23   intent to induce Plaintiff and members of the Class and Subclass to purchase

24   Banfield OWPs and the pet care products and services offered thereunder.

25   158.   Plaintiff and the Class and Sublcass were unaware of the concealed

26   material facts described above at the time of their purchases.  If they had known the

27   concealed facts at the time of their purchases, Plaintiff and the Class and Subclass

28

1  woud not have purchased and/or renewed the OWPs, or purchased the pet care

2  products and services thereunder, and/or they would not have paid as much therefore

3  as they did.

4      159.  As a result of Banfield's concealment of material facts, Plaintiff and the

5  Class and Subclass sustained damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

8      160.  Plaintiff realleges and incorporates by reference all paragraphs alleged

9  herein.

10      161.  Banfield materially and intentionally misrepresented the savings,

11  discounts, pricing, products, and services to be enjoyed by consumers under the

12  OWPs, as alleged more fully above.

13      162.  Banfield's misrepresentations about the OWPs, and the the savings,

14  discounts, pricing, products, and services thereunder, were intended to influence the

15  purchasing decisions of Plaintiff and members of the Class and Subclass, who

16  justifiably relied upon Banfield's misrepresentations as set forth above.

17      163.  Defendant's misrepresentations caused Plaintiff and the Class and

18  Subclass to purchase and/or renew OWPs, and to pay for pet care products and

19  services thereunder, that they would not otherwise have paid for, and/or at prices

20  above what they otherwise would have paid.

21      164.  As a result of Banfield's intentional misprepresentations, Plaintiff and

22  the Class and Subclass sustained damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE CONSUMER PROTECTION ACTS OF THE
VARIOUS STATES**

26      165.  Plaintiff realleges and incorporates the allegations elsewhere in the

27  Complaint as if set forth in full herein.

28

- 53 -

166.   Plaintiff brings this claim individually, on behalf of the nationwide Class, and on behalf of the California Subclass.

167.   By deceptively marketing OWPs in the manner set forth above, and/or upselling additional pet care products and services to OWP clients, Defendant Banfield has engaged in unfair and/or deceptive acts in violation of the state consumer statutes below:

168.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code. §§ 8-19-1, et seq.

169.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. Code §§ 45.50.471, et seq.

170.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat §§ 44-1522, et seq.

171.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. §§ 4-88-107, et seq.

172.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §§ 6-1-101, et seq.

173.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §§ 42-110b, et seq.

174.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, §§ 2511, et seq.

175.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code Ann. §§ 28-3901, et seq.

176.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. Ann. §§ 501.201, et seq.

177.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §§ 10-1-392, et seq.

178.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. §§ 480, et seq.

179.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §§ 48-601, et seq.

180.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1, et seq.

181.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. §§ 24-5-0.5-1, et seq.

182.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code §§ 714.16, et seq.

183.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. §§ 50-623, et seq.

184.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat.  Ann. §§ 367.110, et seq.

185.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. §§51:1404, et seq.

186.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Stat. tit. 5, §§ 205-A, et seq.

187.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code. Ann., Com. Law §§ 13-101, et seq.

188.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A §§ 1, et seq.

189.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws §§ 445.901, et seq.

190.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 8.31, et seq.

191.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. §§ 75-24-3, et seq.

192.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. §§ 407.010 et seq.

193.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. §§ 30-14-101, et seq.

194.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601, et seq.

195.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. §§ 598.0903, et seq.

196.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1, et seq.

197.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. §§ 56:8-1, et seq.

198.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. §§ 57-12-1, et seq.

199.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, et seq.

200.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat §§ 75-1.1, et seq.

201.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-15-01, et seq.

202.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 §§ 751, et seq.

203.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§ 646.605, et seq.

1       204.   Defendant has engaged in unfair competition or unfair or deceptive acts

2  or practices in violation of 3 PA. Cons. Stat. §§ 201-1, et seq.

3       205.   Defendant has engaged in unfair competition or unfair or deceptive acts

4  or practices in violation of R.I. Gen. Laws §§ 6-13.1-1, et seq.

5       206.   Defendant has engaged in unfair competition or unfair or deceptive acts

6  or practices in violation of S.C. Code §§ 39-5-10, et seq.

7       207.   Defendant has engaged in unfair competition or unfair or deceptive acts

8  or practices in violation of S.D. Codified Laws §§ 37-24-1, et seq.

9       208.   Defendant has engaged in unfair competition or unfair or deceptive acts

10  or practices in violation of Tenn. Code Ann. §§ 47-18-101, et seq.

11       209.   Defendant has engaged in unfair competition or unfair or deceptive acts

12  or practices in violation of Tex. Bus. & Com. Code Ann. §§ 17.41, et seq.

13       210.   Defendant has engaged in unfair competition or unfair or deceptive acts

14  or practices in violation of Utah Code. Ann. §§ 13-11-1, et seq.

15       211.   Defendant has engaged in unfair competition or unfair or deceptive acts

16  or practices in violation of Vt. Stat. Ann. Tit. 9, §§ 2451, et seq.

17       212.   Defendant has engaged in unfair competition or unfair or deceptive acts

18  or practices in violation of Va. Code Ann. §§ 59.1-196, et seq.

19       213.   Defendant has engaged in unfair competition or unfair or deceptive acts

20  or practices in violation of Wash. Rev. Code §§ 19.86.010, et seq.

21       214.   Defendant has engaged in unfair competition or unfair or deceptive acts

22  or practices in violation of W. Va. Code §§ 46A-6-101, et seq.

23       215.   Defendant has engaged in unfair competition or unfair or deceptive acts

24  or practices in violation of Wis. Stat. §§ 100.18, et seq.

25       216.   Defendant has engaged in unfair competition or unfair or deceptive acts

26  or practices in violation of Wyo. Stat. Ann. §§ 40-12-101, et seq.

27

28

1   217.   The acts, practices, sales tactics, misrepresentations and omissions by

2   Banfield described above, and Banfield's dissemination of deceptive and misleading

3   marketing materials concerning Banfield OWPs and the products and services

4   offered thereunder, constitutes unfair or deceptive acts or practices within the

5   meaning of each of the above-enumerated state statutes, because each of these

6   statutes generally prohibits deceptive conduct in consumer transactions, and each

7   provides substantially similar grounds for relief as under California's FAL, CLRA,

8   and/or UCL.

9   218.   Banfield violated each of these statutes by: (i) misrepresenting the

10  savings, discounts, products, and services available under its OWPs; and

11  (ii) upselling unnecessary pet care products and services to OWP clients as described

12  above.

13  219.   Plaintiff, Class members and Subclass members were injured as a direct

14  and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and

15  practices, because: (a) Plaintiff and the Class and Subclass were induced to purchase

16  pet care services they otherwise would not have purchased had they known the true

17  facts, and/or (b) Plaintiff and the Class and Subclass were induced to pay more for

18  Banfield pet care products and services than they would have paid if the true facts

19  alleged above had not been concealed and/or misrepresented.

## PRAYER FOR RELIEF

21  WHEREFORE, Plaintiff, individually and on behalf all others similarly

22  situated, respectfully requests that this Court enter a judgment against Defendant and

23  in favor of Plaintiff, and grant the following relief:

24  A.   Determine that this action may be maintained as a Class action with

25  respect to the Class and Subclass identified herein and certify it as such under Rules

26  23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are

27

28

1   appropriately certified, and designate and appoint Plaintiff as a Class Representative

2   and his counsel as Class Counsel;

3      B.   Declare, adjudge and decree the conduct of the Defendant as alleged

4   herein to be unlawful, unfair and/or deceptive;

5      C.   Enjoin Defendant from continuing the deceptive marketing and unfair

6   business practices alleged herein;

7      D.   Notify all Class and Subclass members about the true limitations on

8   savings and discounts under Banfield's OWPs;

9      E.   Authorize Class and Subclass members to exercise their right to rescind

10   the OWPs without cancellation-related charges;

11      F.   Award Plaintiff and the Class and Subclass restitution of all monies paid

12   to Defendant as a result of unlawful, deceptive, and/or unfair business practices;

13      G.   Award Plaintiff and the Class and Subclass actual, compensatory

14   damages, as proven at trial, except that CLRA damages will be requested after

15   CLRA notice;

16      H.   Award Plaintiff and the Class and Subclass exemplary damages in such

17   amount as proven at trial, except that CLRA punitive damages will be requested after

18   CLRA notice;

19      I.   Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre-

20   and post-judgment interest; and

21      J.   Award Plaintiff and the Class and Subclass such other further and

22   different relief as the nature of the case may require or as may be determined to be

23   just, equitable, and proper by this Court.

24                        **JURY TRIAL DEMAND**

25      Plaintiff, by counsel, requests a trial by jury on his legal claims, as set forth

26   herein.

27

28

1    DATED: November 5, 2013

2                                    **HAGENS BERMAN SOBOL**
                                     **SHAPIRO LLP**
3

4                                    By _____
                                        Lee M. Gordon (174168)
5                                    301 N. Lake Ave., Suite 203
                                     Pasadena, CA 91101
6                                    Tel.: (213) 330-7150
                                     Fax: (213) 330-7152
7                                    lee@hbsslaw.com

8
                                     Steve W. Berman
9                                    HAGENS BERMAN SOBOL SHAPIRO
                                     LLP
10                                   1918 Eighth Avenue, Suite 3300
                                     Seattle, WA  98101
11                                   Telephone:  (206) 623-7292
                                     steve@hbsslaw.com
12

13                                   *Attorneys for Plaintiff and the Proposed*
                                     *Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    STEVE W. BERMAN (*pro hac vice pending*)
     HAGENS BERMAN SOBOL SHAPIRO LLP
2    1918 Eighth Avenue, Suite 3300
     Seattle, WA 98101
3    Telephone: (206) 623-7292
     Facsimile: (206) 623-0594
4    steve@hbsslaw.com

5    LEE M. GORDON (SBN 174168)
     HAGENS BERMAN SOBOL
6    SHAPIRO LLP
     301 N. Lake Ave., Suite 203
7    Pasadena, CA 91101
     Tel.: (213) 330-7150
8    Fax: (213) 330-7152
     lee@hbsslaw.com

9

10   *Attorneys for Plaintiff*
     *and the Proposed Class*

11

12                       UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15   Gregory T. Pero, an individual, *et al.*; on     )
     behalf of himself and all others similarly      )
16   situated,                                         )
                                                       )
17           Plaintiff,                                )    **DECLARATION RE CLRA**
                                                       )    **VENUE**
18           v.                                        )
                                                       )
19                                                     )
     Banfield Pet Hospital, a Delaware                 )
20   corporation,                                      )
                                                       )
21           Defendant.                                )
                                                       )
22                                                     )
                                                       )
23                                                     )
                                                       )
24                                                     )
                                                       )
25

26

27

28

1
                             **DECLARATION RE CLRA VENUE**

2
     I, Gregory T. Pero, do hereby declare and state as follows:

3
     1.    I am a party plaintiff in *Gregory T. Pero, et. al., on behalf of himself*

4
*and all others similarly situated v. Banfield Pet Hospital, a Delaware corporation.*

5
Pursuant to CAL. CIV. CODE § 1780(d), I make this declaration in support of the

6
Class Action Complaint and the claim therein for relief under CAL. CIV. CODE

7
§ 1780(a). I have personal knowledge of the facts stated herein and, if necessary,

8
could competently testify thereto.

9
     2.    This action for relief under CAL. CIV. CODE § 1780(a) has been

10
commenced in a county that is a proper place for trial of this action because

11
Defendant Banfield Pet Hospital does business in this district (the Central District of

12
California) and throughout the State of California.

13

14
     This declaration is signed under penalty of perjury under the laws of the State

15
of California and the United States this 25ᵗʰ day of October, 2013.

16

17

18
                             By: _____

19
                                  Gregory T. Pero

20

21

22

23

24

25

26

27

28