1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STEVE W. BERMAN (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

LEE M. GORDON (SBN 174168)
HAGENS BERMAN SOBOL
SHAPIRO LLP
301 N. Lake Ave., Suite 203
Pasadena, CA 91101
Tel.: (213) 330-7150
Fax: (213) 330-7152
lee@hbsslaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

FILED
2013 DEC 18  PM 3: 33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gregory T. Pero, an individual, and Jeanine N. Metheny, an individual, *et al.*; on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Medical Management International, Inc., d.b.a. Banfield Pet Hospital, a Delaware corporation, <br><br> Defendant. | No. SACV13-01749 JLS (ANx) <br><br> **CLASS ACTION (FRCP 23)** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1

## TABLE OF CONTENTS

2   I.   OVERVIEW ....................................................................................... 1

3   II.   JURISDICTION ................................................................................ 6

4   III.   PARTIES ......................................................................................... 6

5   IV.   FACTUAL ALLEGATIONS ............................................................ 8

6
          A.   Banfield Advertises Wellness Plans as Providing Substantial Minimum
7               Savings and Discounts on Pet Care Products and Services. ...................... 8

8          B.   Banfield Deceptively Markets Substantial Savings and Discounts under
               OWPs, and Unfairly Upsells Other Pet Care Products and Services to
9               OWP Clients........................................................................................ 25

10         C.   Former Banfield Employees and Clients Reveal How Banfield Pushes
               OWPs, Upsells Pet Care Products and Services to OWP Clients to
11               Achieve an Average Patient Charge, and Fails to Deliver the Advertised
               Products and Services for the Advertised Discounted Prices. ................. 29
12
          D.   Plaintiff Gregory T. Pero's History of OWP Purchases. ......................... 38
13
          E.   Plaintiff Jeanine N. Metheny's History of OWP Purchases. ................... 42
14
          F.   Plaintiffs and Members of the Class Suffered Injury as a Result of
15               Banfield's Misconduct. ........................................................................ 44

16   V.   CLASS ACTION ALLEGATIONS.................................................... 45

17   VI.   CAUSES OF ACTION ..................................................................... 48

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

Plaintiff Gregory T. Pero and Plaintiff Jeanine N. Metheny ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Medical Management International, Inc., d.b.a. "Banfield Pet Hospital" ("Banfield" or "Defendant"). Plaintiffs' allegations against Defendant are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## I.   OVERVIEW

1.     Plaintiffs hold these truths to be self-evident: (a) Pet care providers should be honest about the true costs of their products and services, and (b) pet care providers should not upsell unnecessary pet care.

2.     Banfield is part of the multi-billion dollar Mars, Inc. conglomerate, which is best known for selling branded candy products. Banfield operates hundreds of pet care outlets through PetSmart stores around the country.

3.     Banfield aggressively markets, advertises, and sells "Optimum Wellness Plans" ("Wellness Plans" or "OWPs") that purportedly offer deep savings and discounts for preventive pet care services and related pet care products. Banfield has enrolled more than 1 million pets in its OWPs nationwide.

4.     The OWPs do not provide pet care insurance. The OWPs do not provide exclusive services that are not available to the general public. Rather, the OWPs are sold as savings plans that make pet care more affordable. In other words, customers are supposed to pay money for the OWPs in order to save money on the underlying pet care products and services.

5.     Banfield, however, does not ensure and provide the promised savings and discounts under its OWPs, and Banfield upsells unnecessary pet care to OWP clients. This class action seeks to remedy: (a) Banfield's deceptive marketing of savings and discounts under OWPs; and (b) Banfield's deceptive and coercive

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1   upselling of additional pet care products and services to achieve an average patient

2   charge.  Banfield's conduct violates consumer protection laws in California.

3       6.      In particular, Banfield's conduct violates California laws prohibiting

4   sellers from marketing savings and discounts that are false or misleading, and

5   prohibiting them from using unfair sales tactics to sell their goods and services.  In

6   this regard, the challenged conduct violates: (i) California's Business & Professions

7   Code §§ 17500, *et seq.* (the "FAL"), (ii) the Consumers Legal Remedies Act,

8   California Civil Code §§ 1750, *et seq.* (the "CLRA"), (iii) California's Business &

9   Professions Code §§ 17200, *et seq.* (the "UCL"), (iv) California's common law of

10  concealment, and (v) California's common law of intentional misrepresentation.

11      7.      Banfield's OWPs include one or more physical exams, vaccines, and

12  diagnostic tests for cats or dogs.  Additional preventive care services—such as a

13  dental cleaning, urine tests, or X-rays—are included in Banfield's higher-priced

14  OWPs.  The OWP tiers generally include: 2 Puppy Plans (Early Care, and Early Care

15  Plus), 3 Adult Dog Plans (Essential Wellness or Basic Adult Care, Active Prevention

16  or Basic Adult Care Plus, and Special Care), 2 Kitten Plans (Early Care, and Early

17  Care Plus), and 3 Adult Cat Plans (Essential Wellness or Basic Adult Care, Active

18  Prevention or Basic Adult Care Plus, and Special Care).  These OWPs are advertised

19  and operate in a substantially similar manner to one another, with variations for

20  additional service options.

21      8.      At the check-in counters, Banfield service representatives heavily

22  promote the OWPs.  At or next to each in-store check-in counter and in exam rooms,

23  Banfield disseminates a brochure and price sheet advertising OWPs for dogs and a

24  very similar brochure and price sheet advertising OWPs for cats.  Through its in-

25  store print advertising and staff representatives, Banfield promises consumers that

26  they will receive deep savings and discounts under each OWP.  Banfield also

27  advertises OWP savings and discounts through standard form invoices (provided to

28

2

OWP clients at pet care visits).  Banfield disseminated its OWP brochures (with price sheets) and standard form invoices during the four-year period preceding the filing of the Complaint.

9.    For at least the past four years, however, Banfield has misrepresented—and continues to misrepresent—the nature and amount of savings and discounts to be realized through the purchase and use of OWPs.  In this regard, for each OWP, Banfield advertises a monthly payment plan that purportedly entitles clients to minimum annual savings off of regular costs for preventive pet care products and services plus fixed discounts on additional products and services sought by OWP customers.  Banfield, however, simply does not ensure and provide the promised savings and discounts.

10.    In particular, under the OWPs, Banfield promises substantial minimum savings on preventive pet care (e.g., more than $600/yr savings with the base-level dog plan, for percentage savings of more than 50% vs. regular costs).  Banfield also promises that the OWP customer will receive an additional discount on Banfield's other pet care products and services not covered under the plan (e.g., an additional 10% off with the base-level adult dog plan).

11.    Under each OWP, Banfield promises savings and discounts in exchange for a one-time membership fee (e.g., $49.95) plus monthly payments (e.g., $31.95/mth for a base level adult dog plan).

12.    Nonetheless, Banfield misrepresents, conceals, and fails to fully disclose the warped service assumptions and inflated pricing scheme on which the purported savings and discounts are based.

13.    As a common practice, Banfield promises that customers will receive substantial savings under the OWPs, including minimum annual savings, and Banfield promises that the OWPs will always provide the services paid for.  In reality, Banfield provides nothing more than the mere possibility of savings on the

3

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

use of an uncertain number and variety of Banfield pet care products and services over the course of an entire plan year. Banfield does not ensure any minimum savings. In fact, savings are contingent on future pet care services being provided and needed during the plan year. Further still, OWP customers routinely receive and need less than all of the bundled products and/or services under the plan, and as a result, the promised savings evaporate. Meanwhile, Banfield overstates its regular fees, which further misrepresents the ultimate savings and discounts earned by OWP clients.

14.    Pet care providers should put the welfare of pets ahead of corporate profits. Unfortunately, Banfield employs an unfair, deceptive, and coercive policy or practice of directing vets and their staff to garner an Average Patient Charge (also known as "Average Per-Client Charge" or "APC") from OWP clients, which leads to upselling of additional pet care products and services to OWP clients. These upselling efforts compel the OWP client to spend money he or she would not otherwise have spent and wipe out the savings and discounts promised under the OWPs.

15.    Upon information and belief, Banfield routinely markets deceptive savings on OWPs via the in-store OWP brochure (with price sheet), common staff representations made to consumers, the standard client invoice form, and online. Plaintiffs are also informed and believe that Banfield disseminates this deceptive marketing to consumers throughout California.

16.    Banfield's marketing alters consumer perceptions regarding the nature and value of the OWPs. Reasonable consumers expect that they actually will receive the advertised savings on OWPs. In reality, through deceptive advertising and unfair sales tactics, Banfield misrepresents the OWP savings (which are nothing more than a mere possibility), Banfield induces consumers to purchase and retain OWPs, and Banfield induces OWP clients to overpay for pet care products and services.

4

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

17.     Upon information and belief, thousands of California consumers have been victims of Banfield's deceptive marketing of OWPs and corresponding unfair sales tactics.  Banfield knows or reasonably should know that its marketing of OWPs (and the pet care products and services offered thereunder) is and was deceptive, unfair and unlawful.

18.     At all relevant times, Banfield has been under a duty to Plaintiffs and other similarly situated consumers to disclose the truth about the purported savings and discounts offered through the purchase of OWPs, and to abstain from deceptive and coercive upselling of additional pet care products and services to OWP clients.

19.     The true facts about the value of the OWPs, and the pet care products and services sold thereunder, would be material to a reasonable consumer. Therefore, consumer reliance upon Banfield's misrepresentations and omissions can and should be presumed as a matter of law.

20.     At the time Plaintiffs purchased and/or renewed OWPs from Banfield, and at the time they obtained pet care products and services under the OWPs, Plaintiffs actually relied upon Banfield's representations about OWP savings and discounts, and the value of the underlying products and services.  Plaintiffs and other similarly situated consumers were likely to be misled, and they reasonably and justifiably relied to their detriment on Banfield's misrepresentations and omissions of material facts about the savings, discounts, products, and services to be provided through the purchase and use of OWPs.

21.     If Banfield had disclosed the truth about the advertised savings, discounts, products, and services to be provided through the purchase and use of OWPs, then Plaintiffs either would not have purchased the OWPs and/or the pet care products or services thereunder, or Plaintiffs would not have paid as much as they did for them.

22.     As a result of its deceptive marketing and unfair sales tactics, Banfield has generated substantial revenues from the sale of OWPs and the sale of additional pet care products and services to OWP clients.

23.     Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution and injunctive relief to put an end to Banfield's ongoing deceptive marketing and unfair business practices.

## II.     JURISDICTION

24.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other putative Class members are citizens of a different state than Defendant.

25.     This Court has personal jurisdiction over Plaintiff Gregory T. Pero and Plaintiff Jeanine N. Metheny because they reside in California and submit to the Court's jurisdiction.  This Court has personal jurisdiction over the Defendant because it conducts substantial business in the Central District and throughout the State of California.

26.     Venue is proper in this Court because Defendant sold its OWPs within the Central District of California, and a substantial number of the transactions at issue in this Complaint occurred within this District.

## III.     PARTIES

27.     Plaintiff Gregory T. Pero is and was at all relevant times a citizen of the State of California, residing in the City of Anaheim Hills. Plaintiff Pero has purchased from Banfield, and has used and renewed, several OWPs over the course of the past sixteen years, including purchases and renewals of dog and cat OWPs paid for over the past four years, and the purchase of pet care products and services under those OWPs.

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

28.     Plaintiff Jeanine N. Metheny is and was at all relevant times a citizen of the State of California, currently residing in Cathedral City.  During the past two years, Plaintiff Metheny purchased an OWP from Banfield for her dog, used pet care products and services under the OWP, and was charged for renewing the OWP.

29.     Plaintiffs purchased each OWP for personal, family, and household purposes.  Plaintiffs saw and heard Banfield's representations (contained in the in-store brochure, form invoices, and orally from staff representatives) that its OWPs provided substantial savings and discounts off of the regular costs of Banfield's pet care products and services.  Plaintiffs relied on such representations in deciding to purchase, use, and/or renew their OWPs, and the pet care products and services sold thereunder, in order to care for their pets.

30.     Plaintiffs also purchased additional pet care products and services from Banfield in response to the unfair sales tactics described herein.

31.     Plaintiffs either would not have purchased OWPs from Banfield, and/or the pet care products or services that they obtained thereunder, had Banfield properly disclosed the true nature and amount of the purported savings and discounts, and properly disclosed the true facts about its upselling, and/or they would not have paid as much money for the OWPs or for the products and services sold thereunder.

32.     Plaintiffs do not assert any personal injury claims to their pets or themselves in this action as a result of using Defendant's OWPs or other products or services.

33.     Defendant Medical Management International, Inc., d.b.a. "Banfield Pet Hospital" (also known as Banfield, The Pet Hospital, and formerly known as "VetSmart Pet Hospital" or "VetSmart"), is a Delaware Corporation headquartered in Portland, Oregon.

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

34.     Plaintiffs are informed and believe that Mars, Inc. purchased a majority interest in Banfield in or about 2007, and that PetSmart, Inc. acquired a minority interest in Banfield.

35.     Presently, Banfield operates more than 800 pet hospital outlets across the country, with at least dozens of Banfield outlets located in PetSmart stores throughout California.

## IV.     FACTUAL ALLEGATIONS

### A.     Banfield Advertises Wellness Plans as Providing Substantial Minimum Savings and Discounts on Pet Care Products and Services.

36.     Banfield is one of the nation's largest pet care service providers due to its partnership with PetSmart and outlet locations inside of PetSmart stores.

37.     Banfield staff members aggressively promote the OWPs to consumers who bring their pets to Banfield.  In the process, staff members emphasize the substantial savings and discounts to be achieved under the OWP. In fact, Banfield employees are highly incentivized to push the OWPs on consumers, to pack all preventive pet care into two visits per year, and to push additional products and services each visit as a means to increase their internal Average Patient Charge.

38.     Banfield provides an OWP brochure with price sheet at each store or "hospital" (for dogs and for cats).  The brochure (available at or next to the check-in counter and in exam rooms) identifies the pet care services to be provided under each OWP.  "Each Plan includes: Unlimited free office visits and physical exams; comprehensive exams by a licensed veterinarian; high quality vaccines; early screening for serious illnesses; convenient drop-offs and evening and weekend hours."

39.     According to the in-store brochures: "Unlike insurance, where you pay for coverage you may never use, *Optimum Wellness Plans always provide the services you pay for*." [Emphasis added] In reality, as discussed herein, the OWPs routinely fail to provide the particular services paid for at the discounted prices being

8

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

advertised by Banfield.  Indeed, Banfield locations may not even be suited with the

proper supplies or equipment to provide each of the services that OWP clients pay

for.

      40.    According to the Banfield brochure regarding the basic OWP for dogs:

"Consistent preventive care is essential, even with young healthy dogs.  This

Essential Wellness Plan establishes and manages baselines of wellness information

to help keep your dog healthy."

      41.    The OWP service options for dogs are broken out as follows (See

*Figures 1-4*):

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



# Puppy Plans

Establish an early habit of preventive care for your puppies less than six months of age. Remember, dogs age 6–10 years for each one of ours. Start them off on the right paw with the right plan.

## Early Care Plan

### Includes:

- **Comprehensive physical exam**
  *This in-depth evaluation assesses your puppy's overall health and establishes important baseline information.*

- **Vaccinations***
  *Protects against a wide variety of diseases and infections, based on your pet's individual needs.*

- **Diagnostic testing including heartworm, lyme, ehrlichia and ear swab****
  *Identifies disease, parasites and infections. Catches issues early before they become more serious and harder to treat.*

- **Fecal exams (3X) and deworming (4X)**
  *Detects and treats parasites and other intestinal organisms that can cause disease.*

- **Free office calls/exams**
  *No need to delay when you have a concern about your puppy's health!*

**Plus:
5% OFF
most other
services**

## Early Care Plus Plan

### Includes Early Care Plan services:

- Comprehensive physical exam
- Vaccinations*
- Diagnostic testing including heartworm, lyme, ehrlichia and ear swab**
- Fecal exams (3X) and deworming (4X)
- Free office calls/exams

### AND:

- **Spay or neuter surgery including pre-anesthetic blood testing, blood pressure check, internal organ screens and electrolytes**
  *Helps your pet live a healthier, happier, longer life and minimizes dog overpopulation. Thoroughly assesses your puppy's health before anesthesia and builds baselines to guide current and future care.*

**Plus:
10% OFF
most other
services**

[*Figure 1*]

10

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Essential Wellness



Every dog needs a plan. Consistent preventive care is **essential**, even with **young, healthy dogs.** This Essential Wellness Plan establishes and manages baselines of wellness information to help keep your dog healthy.



*Essential Wellness Plan Includes:*

• Comprehensive physical exam (2X)
*This in depth evaluation assesses your dog's overall health and establishes important baseline information for you and your veterinarian.*

• Vaccinations*
*Protects against a wide variety of diseases and infections, based on your pet's individual needs.*

• Diagnostic testing including bloodwork, internal organ screens, heartworm, lyme, ehrlichia and ear swab**
*Identifies disease, parasites and infections. Catches issues early before they become more serious and harder to treat. Builds baselines for current and future care.*

• Fecal exams (2X) and deworming (2X)
*Detects and treats parasites and other intestinal organisms that can cause disease.*

• Unlimited free office visits
*No need to delay when you have a concern about your dog's health!*

Plus:
10% OFF
most other
services

[*Figure 2*]

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



[*Figure 3*]

12

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Special Care

Often **older dogs** or those with **special care needs** require proactive management of chronic disease. The Special Care Plan is designed specifically for this group.



| **Includes Essential Wellness services:** | **Active Prevention services:** | **AND Special Care services:** |
|---|---|---|

- Comprehensive physical exam (2X)
- Vaccinations*
- Diagnostic testing including bloodwork, internal organ screens, heartworm, lyme, ehrlichia and ear swab**
- Fecal exams (2X) and deworming (2X)
- Unlimited free office visits

- Dental cleaning including full pre-anesthetic work-up
- Urine testing

- Chest X-rays (3 views)
  *Evaluates the tissues, organs and bones in the chest cavity. Assesses potential breathing or heart issues.*
- Electrocardiograms (2X)
  *Verifies that the electrical system in the heart is functioning normally.*
- Additional urine testing
  *Detects infections, dehydration and disease. Important to do twice a year for chronic disease diagnosis and management.*





**Plus: 20% OFF most other services**

[*Figure 4*]

13

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1      42.    In particular, the brochures include OWP price-sheets that set forth the

2  purported "**Minimum Annual Savings**" on pet care services included in the OWP

3  for dogs. *Figure 5* below reflects a price sheet for the dog OWPs printed in or about

4  January 2013 and disseminated thereafter in Southern California:

## Optimum Wellness Plan® Canine Plan Prices

Affordably priced healthcare plans that spread the cost conveniently over twelve months.

### Puppy Plans

| | Early Care | Early Care Plus |
|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 |
| Monthly Payment | $32.95 | $39.95 |
| Annual Cost | $395.40 | $479.40 |
| Minimum Annual Savings | $637.06 | $873.01 |
| Additional discount on most products and services | 5% | 10% |

### Adult Plans

| | Essential Wellness | Active Prevention | Special Care |
|---|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 | $49.95 |
| Monthly Payment | $31.95 | $39.95 | $49.95 |
| Annual Cost | $383.40 | $479.40 | $599.40 |
| Minimum Annual Savings | $700.13 | $1008.61 | $1422.94 |
| Additional discount on most products and services | 10% | 15% | 20% |

**Optimum Wellness Plans.**
**Your dog's prescription for good health.**

Your Banfield veterinarian will recommend the right wellness plan for your dog.

**Banfield**
PET HOSPITAL

For complete terms and conditions of membership, please read the Optimum Wellness Plan agreement.

[*Figure 5*]

14

1    43.    *Figure 6* below reflects a price sheet for dog OWPs printed in or about

2    August 2013 and disseminated in Southern California (also setting forth purported

3    "**Minimum Annual Savings**" on pet care services included in the OWP for dogs):

4

5

## Optimum Wellness Plan® Canine Plan Prices

Affordably priced healthcare plans
that spread the cost conveniently
over 12 months.

### Puppy Plans

|  | Early Care | Early Care Plus |
|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 |
| Monthly Payment | $32.95 | $39.95 |
| Annual Cost | $395.40 | $479.40 |
| Minimum Annual Savings | $654.16 | $890.11 |
| Additional discount on most products and services | 5% | 10% |

### Adult Plans

|  | Essential Wellness | Active Prevention | Special Care |
|---|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 | $49.95 |
| Monthly Payment | $31.95 | $39.95 | $49.95 |
| Annual Cost | $383.40 | $479.40 | $599.40 |
| Minimum Annual Savings | $618.33 | $926.81 | $1,426.16 |
| Additional discount on most products and services | 10% | 15% | 20% |

Optimum Wellness Plans.
Your dog's prescription for good health.

Your Banfield veterinarian will
recommend the right wellness
plan for your dog.



For complete terms and conditions of membership,
please read the Optimum Wellness Plan Agreement.

Price Level 17
8507565 ©Banfield 2013 08

[*Figure 6*]

15

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

44.     According to the sample price sheet in **Figure 5**, a consumer purchasing the Active Prevention OWP for one adult dog would pay a one-time Membership Fee of $49.95, plus a Monthly Payment of $39.95, for an Annual Cost of $479.40, reflecting "***Minimum*** Annual Savings" of $1,008.61.

45.     The purported minimum savings reflected on Banfield price sheets are false and/or misleading.  As a general practice prior to purchase, Banfield does not supply consumers with retail price lists or similar information about all of the individual costs used to calculate the advertised savings and discounts.  Nonetheless, Banfield may require OWP clients to pay the undisclosed retail pricing for previously used pet care products and services if the OWPs are cancelled before the end of the plan year.

46.     In truth, many OWP clients save nothing and others save far less than promised.  The savings depend on Banfield providing bundled pet care products and services to OWP clients over the course of an entire plan year.  Banfield, however, does not actually provide all of the bundled products and services to OWP clients and/or the OWP clients do not need all such products or services, and as a result, the purported savings evaporate.  Importantly, if the OWP client cancels during the plan year, any savings may be wiped out, leaving the OWP client with little more than a history of overpayments.  The advertised minimum annual savings also ignore the costs of unnecessary pet care products and services upsold to OWP clients as well as bogus service fees that Banfield assesses on top of other OWP charges for services supposedly rendered (e.g., a "professional service" or "hospitalization" fee).

47.     The cat OWP advertising is substantially similar to the dog OWP advertising.  According to the Banfield brochure regarding the basic OWP for cats: "Consistent preventive care is essential, even with young healthy cats.  This Essential Wellness Plan establishes and manages baselines of wellness information to help keep your cat healthy."

16

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1    48.    The OWP service options for cats are broken out as follows (See

2    *Figures 7-10*):



## Start your kitten off right.

Establish an early habit of preventive care for your kittens less than six months of age. Remember, cats age 6–10 years for each one of ours. Start them off on the right paw with the right plan.

### Early Care Plan

- **"Introduction" comprehensive physical exam**
  *This in-depth evaluation assesses your kitten's overall health and establishes important baseline information.*
- **"Graduation" comprehensive physical exam**
  *Toward the end of your plan year, we'll focus on what to expect as your kitten moves into adulthood and help you plan for the next stage of preventive care.*
- **Vaccinations***
  *Protects against the most important infectious diseases your kitten can get.*
- **Diagnostic testing including leukemia, feline immunodeficiency virus and ear swab****
  *Identifies disease, parasites and infections. Catches issues early before they become more serious and harder to treat.*
- **Fecal exam (3x) and deworming (4x)**
  *Detects and treats parasites and other intestinal organisms that can cause disease.*
- **Free office visits**
  *No need to delay when you have a concern about your kitten's health!*

**Plus: 5% OFF** nearly all other products and services

### Early Care Plus Plan

*Includes Early Care Plan services:*
- Comprehensive physical exam (2x)
- Vaccinations*
- Diagnostic testing including leukemia, feline immunodeficiency virus and ear swab**
- Fecal exam (3x) and deworming (4x)
- Free office visits

#### AND:
- **Spay or neuter surgery including pre-anesthetic blood testing, blood pressure check, internal organ screens and electrolytes**
  *Helps your pet live a healthier, happier, longer life and minimizes cat overpopulation. Thoroughly assesses your kitten's health before anesthesia and builds baselines to guide current and future care.*



**Plus: 10% OFF** nearly all other products and services

[*Figure 7*]

17

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Essential Wellness

Every cat needs a plan. Consistent preventive care is **essential**, even with young, healthy cats. This Essential Wellness Plan establishes and manages baselines of wellness information to help keep your cat healthy.



## Essential Wellness Plan

• **Comprehensive physical exam (2x)**

*This in-depth evaluation assesses your cat's overall health and establishes important baseline information for you and your veterinarian.*

• **Vaccinations***

*Protects against the most important infectious diseases your cat can get.*

• **Diagnostic testing including leukemia**, feline immunodeficiency virus**, heartworm**, bloodwork, internal organ screens and ear swab****

*Identifies disease, parasites and infections. Catches issues early before they become more serious and harder to treat. Builds baselines for current and future care.*

• **Fecal exam (2x) and deworming (2x)**

*Detects and treats parasites and other intestinal organisms that can cause disease.*

• **Unlimited free office visits**

*No need to delay when you have a concern about your cat's health!*



Plus:
10% OFF
nearly all other products and services

[*Figure 8*]

18

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Active Prevention

By age three, more than 85 percent of cats show signs of gum disease which, if left untreated, can lead to serious illness. Give your cat essential care plus active prevention. This plan provides **dental cleaning and early screening** for common diseases.



### Includes Essential Wellness services

- Comprehensive physical exam (2x)
- Vaccinations*
- Diagnostic testing including leukemia**, feline Immuno-deficiency virus**, heartworm**, bloodwork, internal organ screens and ear swab**
- Fecal exam (2x) and deworming (2x)
- Unlimited free office visits

### PLUS Active Prevention services

- **Dental cleaning including full pre-anesthetic work-up**
  *Prevents serious infection, tooth loss, pain and potential for heart and kidney disease. Thoroughly assesses your cat's health before anesthesia.*
- **Urine testing**
  *Detects infections, dehydration and disease.*

Plus:
15% OFF
nearly all other products and services

[*Figure 9*]

19

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



[*Figure 10*]

26
27
28

20

1    49.    The price-sheets included with the OWP brochures for cats set forth the

2    purported "**Minimum Annual Savings**" on pet care services included in the OWP,

3    which are false or misleading in the same manner as the advertised pricing for dog

4    OWPs. *Figure 11* below reflects a price sheet for the cat OWPs printed in or about

5    January 2013 and disseminated thereafter in Southern California:





[*Figure 11*]

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50.  *Figure 12* below reflects a price sheet for the cat OWPs printed in or about August 2013 and disseminated thereafter in Southern California:

## Optimum Wellness Plan" Feline Plan Prices

Affordably priced healthcare plans that spread the cost conveniently over 12 months.

### Kitten Plans

| | Early Care | Early Care Plus |
|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 |
| Monthly Payment | $30.95 | $35.95 |
| Annual Cost | $371.40 | $431.40 |
| Minimum Annual Savings | $424.56 | $584.51 |
| Additional discount on most products and services | 5% | 10% |

### Adult Plans

| | Essential Wellness | Active Prevention | Special Care |
|---|---|---|---|
| One-Time Membership Fee | $49.95 | $49.95 | $49.95 |
| Monthly Payment | $22.95 | $29.95 | $39.95 |
| Annual Cost | $275.40 | $359.40 | $479.40 |
| Minimum Annual Savings | $610.53 | $931.01 | $1,128.10 |
| Additional discount on most products and services | 10% | 15% | 20% |

**Optimum Wellness Plans.**
**Your cat's prescription for good health.**

Your Banfield veterinarian will recommend the right wellness plan for your cat.



For complete terms and conditions of membership, please read the Optimum Wellness Plan Agreement.

[*Figure 12*]

22

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

51.     Banfield also advertises and promotes purported savings on its invoices to OWP clients.  A standard invoice, for instance, includes a column for "Regular Fee", a column for "Your Fee", and a summary dollar amount of Wellness Plan discounts to date resulting in "*lifetime savings*" as stated therein.

52.     The advertised savings are false or misleading in multiple ways. Banfield promises that customers will receive substantial savings under the OWPs, including minimum annual savings.  The promises are hollow because Banfield provides nothing more than the mere possibility of savings on the use of an uncertain number and variety of Banfield pet care products and services over the course of a plan year.  There are, in fact, no minimum savings.  Banfield also promises that the OWPs will always provide the services paid for.  In truth, Banfield does not provide all of the bundled services to OWP clients.

53.     With each invoice for each pet visit, Banfield reports accumulated savings.  Yet, the purported savings could not actually accumulate unless and until a year's worth of OWP fees were paid.  In addition, the invoices flatly misrepresent the costs of OWP membership..  As a general practice, only the first invoice reflects membership fees being charged by Banfield—the remaining invoices falsely report savings as if there were no further membership fees being charged, when in fact, such fees were being automatically charged to the OWP client's credit card.  While the first invoice to each OWP client lists membership fees, it actually includes such fees in *both* the "Regular Fee" and "Your Fee" column.  As a result, all Banfield invoicing overstates the savings to OWP clients.

54.     Furthermore, Banfield's OWP advertising fails to disclose Banfield's policy or practice of soliciting an Average Patient Charge from OWP clients. Simply put, the policy or practice causes OWP clients to spend more and save less than Banfield promised.

55.     Further, the OWP advertising also fails to disclose that Banfield charges additional service fees in conjunction with purportedly covered services (like "professional service" charges).

56.     Further still, Banfield's OWP advertising also fails to disclose the retail fees charged upon cancellation of an OWP prior to the end of a plan year.

57.     Plaintiffs are informed and believe that Banfield disseminates substantially similar representations about deep savings under the OWPs to consumers throughout California by means of the standard OWP brochures (with price sheets), common staff representations, form invoices, and Banfield's website.

58.     For each OWP, Banfield charges a one-time membership fee—for example, $49.95 in California for first pets—plus ongoing monthly payments. Pricing may vary over time and/or according to the company's pricing markets in the United States.

59.     In September 2013, for a first puppy dog in California (i.e., under six months old), Banfield generally reported base monthly payments at $32.95 (i.e., the Early Care OWP) and monthly payments under the Early Care Plus OWP at about $39.95.  For an adult dog in California, Banfield generally reported base monthly payments at $31.95 (i.e., the Essential Wellness OWP), monthly payments for the mid-tier OWP at $39.95 (i.e., the Active Prevention OWP), and monthly payments for the top-tier OWP at $49.95 (i.e., the Special Care OWP).

60.     In September 2013, for a kitten in California (i.e., under 6 months), Banfield generally reported base monthly payments at $30.95 (i.e., the Early Care OWP), and monthly payments for the Early Care Plus OWP at $35.95.  For an adult cat in California, Banfield generally reported base monthly payments at $22.95 (i.e., the Essential Wellness OWP), monthly payments for the mid-tier OWP at $29.95 (i.e., the Active Prevention OWP), and monthly payments for the top-tier OWP at $39.95 (i.e., the Special Care OWP).

24

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

61.     Banfield promotes all Wellness Plans for dogs and cats as providing savings of about 45%-70% off the regular costs for preventive pet care services, plus additional OWP discounts on most other Banfield pet care products and services of about 5%-20% (as stated in the OWP brochure materials set forth above).

62.     After credit card enrollment, Banfield may provide the new OWP client with a copy of a standard OWP agreement.  In the terms and conditions thereunder, Banfield asserts that clients are committed to each OWP for successive one-year terms that automatically renew or upgrade unless cancelled.

**B.      Banfield Deceptively Markets Substantial Savings and Discounts under OWPs, and Unfairly Upsells Other Pet Care Products and Services to OWP Clients.**

63.     In no uncertain terms, for each OWP at issue, and at least for the past four years preceding the filing of the Complaint, Banfield has promised substantial minimum savings and percentage savings on preventive pet care products and services and significant discounts on most other pet care products and services offered at Banfield.

64.     In its core advertising, Banfield also promises that the OWPs provide essential preventive care and *"always provide the services you pay for."*

65.     Yet, Banfield misrepresents the purported savings and discounts under each OWP, and the services provided, in several ways:

a.      Banfield does not ensure any savings (much less substantial minimum savings).  In truth, savings are conditional and contingent on future pet care services being provided and needed, on veterinary recommendations being made with respect to the bundled services, and on non-cancellation of the OWP during the plan year;

b.      Banfield charges OWP clients for a pet care bundle that includes services the clients don't actually receive and need (despite Banfield's assurances that OWP clients always get the services they paid for);

25

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

c.     Banfield represents that OWP clients accumulate savings at each visit.  In fact, savings only accumulate—if at all—after the client pays a year's worth of OWP fees;

d.     Banfield inflates the regular costs that it uses to calculate the purported savings and discounts under OWPs, which costs include unjustified fees and markups on top of OWP membership charges; and

e.     Banfield conceals and obscures cancellation-related charges.

66.     Even though Banfield knew that the advertised savings were contingent on future events, and thus the savings were nothing more than a mere possibility, Banfield affirmatively represented that OWP clients would in fact receive definite and substantial savings under the OWPs.

67.     Plaintiffs are informed and believe that Banfield engages in a common policy or practice of soliciting an Average Patient Charge from OWP clients, and as a result, Banfield vets and their staff routinely provide more pet care services, order more medications, and/or perform more tests for OWP clients than otherwise necessary.

68.     Banfield attributes part of the savings advertised under the OWPs to vaccinations that are not provided and/or not necessary (e.g., 2 Distemper/Parvovirus vaccines per year for an adult dog, or non-core vaccines that are not vet recommended).

69.     Banfield also attributes part of the savings advertised under the OWPs to health care certificates (i.e., certificates for interstate traveling with pets).  Yet, Plaintiffs are informed and believe that these certificates are not routinely provided and typically go unused.  In fact, Banfield does not even meaningfully inform OWP clients that it attributes part of the OWP savings to such certificates.

70.     Banfield purportedly conditions cancellation of an OWP on payment of retail fees for services used up to the cancellation date (unless a full year's

26

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1  membership fees are paid). OWP cancellations wipe out prior savings and discounts.

2  Yet, Banfield does not disclose the retail fees for OWP services in its upfront

3  advertising.

4  71.  Banfield conditions the advertised savings and services on another

5  future event—namely, a veterinary recommendation. If the vet recommends against

6  a covered service, Banfield generally does not provide that service to the OWP

7  client.

8  72.  Since OWPs include unprovided and/or unneeded pet care products and

9  services bundled with essential preventive care, the overall OWP savings are

10  misstated. Likewise, the savings are misstated to the extent that OWP clients cannot

11  use or otherwise do not receive all of the pet care products or services on which the

12  purported savings are based. As a general practice, Banfield does not provide

13  refunds for unused products and services.

14  73.  Furthermore, the purported savings are deceptive insofar as they do not

15  fully take into account: (i) the true costs of owning an OWP (i.e., membership,

16  monthly fees, additional fees and markups, etc.); and/or (ii) the fact that the

17  purported savings can only be earned after the client pays OWP fees for the entire

18  plan year (rather than per visit).

19  74.  In order to pump up the Average Patient Charges, and unless otherwise

20  requested, Banfield routinely supplies pet medications directly to OWP clients

21  instead of providing prescriptions. In the process, Banfield charges OWP clients

22  substantially more than the y could pay for the same or similar medications outside

23  of Banfield. Consequently, OWP clients end up overpaying for pet medications

24  rather than receiving medications at discounts vs true retail costs. Moreover,

25  Banfield tacks on professional service fees in connection with covered services,

26  which further inflates the purported savings and discounts under the OWPs.

27

28

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

75.     Furthermore, when a client wants to cancel the OWP during the plan year, Banfield may retroactively impose its full retail fees to date or assess a full year's worth of OWP payments. The harsh cancellation provisions—*which apply even when a pet dies during the plan year*—tend to wipe out the advertised savings. The cancellation provisions are doubly problematic insofar as Banfield overstates the retail fees incurred at the outset of the relationship, a fact which further locks clients into ongoing OWP commitments.

76.     Plaintiffs are informed and believe that, as a matter of policy and practice, Banfield trains its sales representatives and sets up its computer system to enroll consumers in the OWPs before Banfield provides a copy of an OWP agreement.  Only after the client provides Banfield with a credit card to be charged for automatic enrollment purposes does Banfield provide the OWP agreement to the client, if at all.  This unfair, deceptive, and unlawful sales tactic is designed to induce consumers to commit to the OWP before considering restrictions that severely reduce the value of the purchased services.

77.     After credit card enrollment (and often after the initial exam), Banfield may provide the client with the OWP agreement, including the harsh and inequitable cancellation provision in fine print.

78.     Plaintiffs relied on Banfield's marketing because, unlike Banfield, Plaintiffs did not have access to and knowledge of the services and retail costs on which Banfield purportedly based the advertised savings and discounts.  Nor did Plaintiffs have specialized knowledge about the pet care products and services being sold.

79.     At the time Plaintiffs purchased their OWPs, they did not know that Banfield's advertised savings and discounts on pet care products and services were false and/or misleading.

28

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

80.    In addition to the deceptively marketed savings and discounts, and as a matter of policy and practice throughout at least the four years preceding the filing of this Complaint, Banfield has employed unfair sales tactics by directing vets and their staff to solicit an Average Patient Charge, which results in upselling of additional pet care products and services to OWP clients.

81.    Moreover, at the time Plaintiffs purchased their OWPs, they did not know that Banfield was engaging in sales tactics designed to push pet care products and services on OWP clients in order to achieve an Average Patient Charge.

82.    Consumers like Plaintiffs must and do rely on pet care hospitals to honestly describe their costs and savings, not to upsell unnecessary or overpriced products and services, and to put the welfare of the pets ahead of corporate profits.

**C.    Former Banfield Employees and Clients Reveal How Banfield Pushes OWPs, Upsells Pet Care Products and Services to OWP Clients to Achieve an Average Patient Charge, and Fails to Deliver the Advertised Products and Services for the Advertised Discounted Prices.**

83.    Online testimonials from former Banfield employees, including the following examples, are telling:

a)  "[Constant] pressure from corporate to sell the more expensive wellness plans. At one point we were being told we need to 'triple penetrate' the clients for various types of preventative plans. There is constant over scheduling of exams and surgeries."

b)  "I was a very hardworking, dedicated employee who had never received a written communication memo and suddenly received two with in three months time for not meeting the wellness plan precentage [sic] for the quarter. I had no other option but to seek employment elsewhere as I was imminently facing termination."

29

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

c)  "The corporate headquarters of this company only cares about the bottom line.  They gouge their clients, and expect their employees to do the same."

d)  "I felt so sorry for our relief/new hire doctors because they would put together a reasonable treatment plan for a Pet (reasonable being what the pet needed no extras) and then get berated that their APC (Average Patient Charge) was below $140! Some would cave in after multiple nasty emails and phone calls, many moved on. I felt sorry for the poor pets and clients. Its hard to respect a company who doesn't respect their clients."

e)  "Banfield has something called APC, average patient charge. This is the figure that determines the success of your hospital at the end of the day. Patient care = APC. Bottom line."

f)  "Constantly having to upsell unnecessary products and the Wellness Plans."

g)  "You have to try and sell as many wellness plans as you can and whatever monthly item corporate wants you to sell. All the hospitals get ranked in their district so it's always a competition. . . .Some customers get annoyed when they're not on a plan and you ask them each visit if they want to join. Each customer is seen as a dollar sign, your goal is to make them spend more than $100 each visit."

h)  "I have been a vet tech with Banfield for six years. It began as my dream job. . . Then we were taken over, by all things, a giant candy corporation. This made perfect sense

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1  of course -- making chocolate and caring for pets is

2  obviously a natural transition. That is when it began a rapid

3  downhill slide toward the changing of priorities to the all-

4  mighty dollar in place of pet care."

5      84.    These employee testimonials (which are available online at sites such as

6  glassdoor.com) reflect how Banfield sets an Average Patient Charge and upsells

7  unnecessary pet care services (like needless diagnostic tests) and costly medications

8  (like overpriced antibiotics, heartworm medications, and flea medications) at inflated

9  prices to a captive audience, while routinely failing to provide the comprehensive

10  preventive care that Banfield promised to provide in accordance with its advertising.

11      85.    Plaintiffs are informed and believe that the Banfield Petware computer

12  system automatically recommends extra diagnostic tests and/or medications for pets

13  such that OWP clients incur additional charges that otherwise could have been

14  reduced or avoided.

15      86.    Plaintiffs are also informed and believe that, as a matter of policy and

16  practice, Banfield staff are trained to achieve and directed to collect an APC (e.g., an

17  average amount north of $100 per visit), and thus to induce OWP clients to pay for

18  pet care products and services that are not needed and/or not provided.

19      87.    Plaintiffs, like other OWP clients, weres unfairly induced to purchase

20  unnecessary diagnostic tests, treatments, and/or medications for their pets without

21  receiving full advance disclosures.  Plaintiffs could have avoided those charges

22  entirely or gone elsewhere and paid less.

23      88.    Like the former Banfield employee statements, there are a huge number

24  of former client complaints about Banfield practices reflecting how Banfield upsells

25  unnecessary services and medications and fails to deliver the advertised preventive

26  care services for the advertised discounted prices. Many hundreds if not thousands of

27  client complaints are available online at consumer sites such as consumeraffairs.com,

28

31

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1    consumerboard.com, and yelp.com, and at the Better Business Bureau.  Several

2    examples follow:

3        a) "I've been taking my dog to Banfield for years now. I got

4           the Wellness Plan after telling me it would save money. It

5           never did. Every time I take the dog to Banfield, I'm told

6           this or that needs to be done and some of the dumbest

7           reasons why. I'm going to be honest here good people, I

8           work for Petsmart (number of years). Don't take your

9           animal to Banfield, they will take you for every penny you

10          have and try and scare you into buying everything and

11          anything."

12       b) ". . .I personally feel like they prey on owners who care

13          deeply for their pets by quoting high retail costs and then

14          using that as a means to get people to sign up for wellness

15          plans. . . . How many people REALLY make full use of the

16          plan, except annual check up, shots, emergencies? So you

17          either pay ridiculous fees for the services you DO use, or

18          you pay a seemingly less ridiculous fee for services you

19          don't fully use. The fact that they can discount everything

20          with the wellness plan should show how much they

21          overcharge in the first place."

22       c) "There have been multiple mistakes in the three years I

23          have had a wellness contract with Banfield, but this was the

24          final straw. I am done!! I cancelled my contract for both

25          my dogs with Banfield Pet Hospital, but of course they

26          would not give me any sort of refund on the remaining time

27          on the contract."

28

32

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

d) ". . .Banfield[] inflates their prices so they 'appear' to give
you a discount because you are on their wellness plan. I
have checked with other vets to verify this happens. Their
prices are out of line with others in the same business."

e) "…They recommended an extraction and dental cleaning. I
could not afford the procedure, so they suggested their
'wellness plan' to bring the cost down to something I could
afford right away. They told me it was urgent to get him in
right away so they 'fit him into their schedule'the next day.
Of course when they had him under anesthesia, they called
to tell me he needed two more teeth extracted at the cost of
another $150. The original tooth fell out on the table, but I
was still charged for that extraction."

f) "[The wellness program] is a complete waste of money.
They encourage you to come in and then overcharge
everything that's not on the plan. So not worth it!"

g) "I ended up having to call the Banfield Complaint Center,
and was pretty much told that since I signed something, I
was stuck in the plan. I explained to them that I was never
told anything about it being renewed and that I was able to
cancel this. . . . Also, they up-charge like a car dealership."

h) "[E]very visit I never feel confident in their advice or
prescription, mostly they seem to have an agenda that I
leave owing them money in some way since I'm on the
Wellness Plan and not paying that day. Getting me to buy
additional services is obviously a high priority."

i) "Please, I am trying to make others aware to NOT purchase the Banfield Animal Hospital Plan! I took my new puppy into their hospital for his first visit to make sure he was healthy and to begin his shots. They sold me their wellness plan, and I signed up because I trusted they would deliver those services. Unfortunately, that HAS NOT happened. On both the 2nd and 3rd visits, they called me on my cell to explain they had emergencies and were running terribly behind. Both times, appointments were made as per the wellness plan, but I ONLY saw a vet ONE time, and that was on the 1st visit, when the plan was sold to me. I paid based on the plan's breakdown of visits or 'exams'. The only services performed were shots."

j) "If your pet needs medications, the prices they charge are inflated by 500%. I told them that I would get one of the prescriptions they wanted to charge me $53 for at my pharmacy. I paid $12 at the pharmacy. This is an ongoing practice of theirs."

k) "I bought Wellness plan for my elderly dog. I specifically asked if I could cancel at any time and the answer was yes. This is totally untrue, as they will continue to charge you until the year is up. They try to tell you that the expenses you racked up for services are far more than what you owe, so you will have to pay the difference. . . . The amounts that they charge for their services are far and above the normal rates than a neighborhood vet charges. How do I

34

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1   know this? My dog went to a neighborhood vet for the first

2   11 years of his life, as does his sister."

3   l)   "The wellness plans are a total sham - every visit, I've had

4        to fight to get the vet to perform the most routine tests that

5        are promised in the plan, and even then, they find

6        loopholes to charge you... They charge several times the

7        regular rate for meds, etc. so you end up paying for what

8        you would have if you'd gone to a reputable vet."

9   m)   "Bottom line, charges that may be discounted as part of the

10       Wellness Plan and what and how they tack on fees is

11       misleading, and frankly bad business. Did you know that if

12       you bring your pet in for a free teeth cleaning, the

13       automatic blood work that they do is only covered if in fact

14       they actually do the teeth cleaning. If the blood work shows

15       additional potential health issues and the teeth cleaning is

16       then suggested to not be done (i.e. anesthesia may be

17       risky), the automatic blood work charges will be charged to

18       you. Even when asked what my charges were in the

19       morning when I dropped my cat off, no mention of this was

20       made. Evidently, it is in the fine print of what I signed as I

21       rushed off to work in the early morning. Regardless, the

22       principle of the matter is that it is misleading.The free teeth

23       cleaning cost me $176.00."

24  n)   "I went in with my dog and waited for over an hour. He

25       was supposed to be seen by the vet for his wellness visit.

26       They were supposed to take his blood and do other tests for

27       his checkup. The nurse saw him, took his temperature, etc.

28

35

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

| | |
|---|---|
| 1 | She tried to take his blood, and she was not able to do so. I |
| 2 | waited in the office for over an hour and the vet never saw |
| 3 | my dog. . .They charged my account for tests, and for a vet |
| 4 | visit. The vet never saw my dog, only the girl (nurse)." |
| 5 | o) "We currently have a Banfield wellness plan for our four |
| 6 | pets. We moved to Maine and Banfield does not provide |
| 7 | services in Maine. However, they will not allow us to |
| 8 | cancel the plan (even though two are new and two were |
| 9 | just renewed). We have to keep paying for four wellness |
| 10 | plans and we cannot even use their facilities. Also, one of |
| 11 | our pets passed away the day after Christmas. We had a |
| 12 | wellness plan for this beloved pet which we only renewed a |
| 13 | couple of months ago so we have barely benefited from the |
| 14 | plan. Unfortunately, Banfield will not cancel the plan so we |
| 15 | have to continue paying for the plan for a pet that is no |
| 16 | longer living and Banfield can no longer treat." |
| 17 | p) "Be careful before you purchase this plan. They will claim |
| 18 | it saves you money over time, but it does not. First of all, |
| 19 | they mark up their medications about 400% to make up for |
| 20 | their free unlimited office visits. You can get the same RX |
| 21 | at Walmart for one-tenth of the price. Secondly, they tell |
| 22 | you they will give you a 10% discount on all other |
| 23 | services; however, my son who doesn't have the plan took |
| 24 | his dog in and paid the same price I did for the same |
| 25 | service." |
| 26 | q) "After my dog got heartworms, my vet suggested this plan. |
| 27 | I ended up still having to pay over $1,000 for treatment |
| 28 | |

36

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1   even though they swore I was getting a deal. After all the

2   treatments and they said my dog was clear, she died a week

3   later. I called to cancel the plan and you have to pay the

4   full 12 months so I'm stuck paying 6 more months for a

5   dog I don't have."

6   r) "I called Banfield corporate to report what I felt was bad

7   business practices and complaining about this plan they

8   sell. I also spoke with the division that sold this plan and

9   asked about the diagnostic blood work. They tried to tell

10   me it was only once, period. Nothing in the brochure and

11   contract state that. And the items that are listed that are

12   limited all specify time limits."

13   s) "I signed up for the $28 puppy plan and it's a waste. I tried

14   to get my puppy sprayed twice and they keep giving

15   reasons why they can't."

16   t) "I have four dogs, all on the Wellness Scams. Every time I

17   would go there, it was a constant push to try to sell me

18   unnecessary care above and beyond the already over-

19   inflated prices on their plans. For example, somehow, the

20   only dog whose blood work was not covered on a

21   particular visit would be the one that they would have a

22   problem that needed to be looked at. Banfield is like an

23   assembly line with the only goal they have is to take more

24   money out of your pocket."

25   u) "[] I called Banfield and they tell me that I owe them $400

26   for the rest of the plan. I argued with the woman and she

27   said this isn't a insurance plan but a payment plan. She said

28

37

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

they have already done over $800 work on the dog. They only gave her shots when I was there, 2 each time for a total of 6. I said what were they giving her, gold in the shots? This company is a total rip-off and total swindlers."

v) "Finally, I managed to cancel the plans for my animals after 2 years of attempts! Even though I had the Banfield plans in place, I receive better service and it was still cheaper to take my animals to a local private vet practice."

w) "I was sold 3 plans for my animals. After I was sold the plans, I was told that they could not clean my 2 cats' teeth because of a heart murmur that was determined at the initial visit. The reason I signed them up for the plans was because they deceived me and talked me into buying 2 dental plans for my cats."

x) "The Wellness Plan is a joke! The service is subpar! The staff is rude! The access to care is usually unavailable or hard to get! It's nothing like the promises that are made, it's more like a bait and switch once you've signed up!"

y) "They will reel you in with "wellness plans". If only the value was truly there! . . . When the time comes to count on them though, the additional charges will start appearing. 'This' is not covered, 'that' is not covered."

**D.     Plaintiff Gregory T. Pero's History of OWP Purchases.**

89.     In 1997, Plaintiff had two older Golden Retrievers named "Alex" & "Chelsea" and a grey tabby kitten named "Tony".   Plaintiff and his wife took Alex and Chelsea to a Banfield outlet (called VetSmart at the time) inside a PetSmart store

38

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1    in the Anaheim Hills, California area.   Plaintiff was first introduced to Banfield's

2    Optimum Wellness Plans at that time.

3         90.    The OWP brochures advertised significant savings on routine services

4    as well as discounts on other services and products, while proactively maintaining

5    the health of your pets.  Plaintiff purchased OWPs for Alex, Chelsea, and Tony in

6    light of the prospect of substantial savings on preventive pet care.  Alex and Chelsea

7    passed away in 2001.

8         91.    In or about 1999-2000, Plaintiff and his wife adopted a young female

9    calico cat named "Ginger" and purchased an OWP for her.   That same year, they

10   also adopted a stray orange tabby named "Wiley Coyote".  Plaintiff also purchased

11   an OWP for Wiley.

12        92.    In the 2001-2002 timeframe, Plaintiff and his wife adopted two six

13   week old Golden Retrievers puppies about a year apart from each other named Jake

14   and Liberty.  Plaintiff purchased an OWP for each puppy.

15        93.    From Plaintiff's perspective, since 2007, Plaintiff has observed

16   considerable negative changes at Banfield in terms of staffing, operations, and

17   customer support.  As time went by, Plaintiff also believes that the better

18   veterinarians at his local Banfield would be gone within 6 months.

19        94.    Around the time that Liberty was 5-6 years old, she developed a

20   cancerous tumor.  Veterinary Surgical Specialists (VCG) in Tustin, CA removed the

21   tumor.  Plaintiff had to take Liberty to VCG versus Banfield because ultra sound is

22   an important method of detecting the return of cancer cells and Banfield did not have

23   ultra sound.  Subsequently, Plaintiff paid out of pocket for regular visits to VCG.

24   Moreover, vaccines were not appropriate for Liberty, since they would have an

25   adverse impact on a dog's immune system.

26        95.    In or about 2007, Plaintiff took Wiley to the Yorba Regional Animal

27   Hospital ("Y.R.A.H.") located next to Plaintiff's local Banfield in the City of Yorba

28

                                        39

Linda, California (the Banfield outlet was closed).  Y.R.A.H. conducted a course of tests and found a tumor located on the outside of Wiley's heart.  The tumor was at an advanced stage and had gone undetected for some time.

96.     In August 2009, Plaintiff received a letter from Banfield informing him of the upcoming OWP renewal that would take effect in September 2009.  The letter identified the core benefits of OWPs including essential preventive pet care that provides cost savings of more than 50%.

97.     In January 2010, Plaintiff and his wife rescued a cat named "Emily". They promptly signed her up to the OWP.  The fee that day for signing her up was a $54.95 one-time Membership fee and a $22.95 monthly fee.  That day, Banfield performed a comprehensive feline exam (which included an Ophthalmic exam and Otoscopic exam).  In March of 2010, Plaintiff took Emily in for an office visit. Banfield ran a number of tests and then recommended that Plaintiff take her to an eye specialist.  The Banfield invoice for that appointment included a line item for Ophthalmic Ointment and two other line items labeled "Professional Service Fee – Per Minute".   The two "Professional Service Fee" line items totaled $222.87 and the total bill was $334.49.   When Plaintiff took Emily to the eye specialist, he learned that her retinas were detached and she was effectively blind and no amount of eye ointment or "Professional Service Fee – Per Minute" was going to change that fact.

98.     In December 2011, Plaintiff and his wife rescued a kitten named "Petey", and Plaintiff purchased an OWP for him.  At this point in time, Plaintiff had six (6) pets in total each on a Banfield OWP.

99.     In August 2012, Jake became very sick and Plaintiff brought him into Banfield for an office visit.  Banfield ran a number of diagnostic tests and x-rays. The Banfield vets indicated that there appeared to be something around his chest on the x-ray, but they couldn't identify what it was.   Again, Plaintiff needed to take his pet to another pet hospital where they had ultra sound equipment.

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1        100.    Plaintiff took Jake to Southern California Veterinary Specialty Hospital,

2    Irvine, CA.   They began another round of tests (including ultra sound) and

3    determined that he was hemorrhaging near his heart.  By the end of the week, Jake's

4    condition deteriorated, and he had to be euthanized.  At the time, Banfield staff

5    assured Plaintiff that they would take care of the termination of the OWP as to Jake.

6        101.    Within days, Liberty got sick too, and Plaintiff immediately brought her

7    into Banfield.  Again, Banfield ran a number of diagnostic tests and x-ray.   Banfield

8    confirmed there was some type of mass around her abdomen, but again, directed

9    Plaintiff to go to another hospital for additional diagnosis.   Liberty's condition

10   continued to rapidly decline as Plaintiff took her to Yorba Regional Animal Hospital.

11   The vet at Yorba Regional promptly determined that she was hemorrhaging

12   internally.  As with Jake only days before, Liberty needed to be euthanized.

13       102.    Plaintiff's neighbor's vet had diagnosed rat poisoning as the root cause

14   of injury to the neighbor's dog who had died during the same week that both Jake

15   and Liberty had died. A few weeks later, Plaintiff's wife found remains of a green

16   brick of rat poison while gardening in their backyard.

17       103.    In or about August 2012, Plaintiff and his wife adopted a couple of

18   Golden Retriever puppies named "Wilson" & "Annie".  Plaintiff purchased OWPs

19   for both of them.

20       104.    Banfield initially continued to bill Plaintiff for monthly charges on the

21   OWP for Jake and the OWP for Liberty after each dog had died.

22       105.    After speaking with Plaintiff, Banfield corporate personnel stopped

23   charging Plaintiff for additional monthly fees for Liberty.  Nevertheless, Banfield

24   continued to charge Plaintiff for the remainder of an entire year of monthly fees for

25   Jake.

26       106.    Plaintiff renewed each of the OWPs that he purchased each year during

27   his pets' lives.  He believed that—under the OWPs that he purchased—he was

28

41

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1  providing essential health care for his pets while achieving substantial cost savings

2  from Banfield.

3      107.  Over the course of his pets' lives, Plaintiff paid out of pocket for

4  numerous blood and diagnostic tests, x-rays, medications, dental cleaning, and more.

5  One or more of the Banfield vets pushed Plaintiff to pay for diagnostic tests for

6  which there was no apparent need and/or value.

7      108.  Prior to and during the four year period preceding the filing of the

8  Complaint, Plaintiff had seen the OWP brochures at his local Banfield, as well as

9  standard form invoices for pet care visits, which materials contain deceptive

10  representations about substantial savings received under the OWPs and which omit

11  material facts about the true nature of the advertised savings (as described above).

12  Prior to and during the four year period preceding the filing of the Complaint, staff at

13  the local Banfield also informed Plaintiff about the substantial savings provided

14  under the OWPs.  If Banfield had fully disclosed the true facts about the advertised

15  savings and services being provided under the OWPs, Plaintiff would have been

16  informed about those facts and he would not have purchased and/or renewed the

17  OWPs on the same terms, and/or he would not have purchased all of the pet care

18  products and services thereunder.

19  **E.**    **Plaintiff Jeanine N. Metheny's History of OWP Purchases.**

20      109.  In January 2012, Plaintiff Metheny received a coupon for a free office

21  visit to Banfield.  On January 5, 2012, she used the coupon to take her dog "Titan" in

22  to her local Banfield in Palm Desert for a visit.  Titan, a Chihuahua, was about 1 & ½

23  years old at the time.

24      110.  During the initial visit and while in the exam room, Plaintiff reviewed

25  the OWP brochure, which represented that OWP customers receive substantial

26  savings and discounts on pet care products and services, and that Banfield always

27  provides the services paid for under the OWP.

28

42

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

111.   During the same visit, the staff orally represented to Plaintiff that she would receive substantial savings on pet care services if she signed up under an OWP.  The staff also represented that her pet would receive a variety of free services, multiple vaccines, exams, and a dental cleaning under the OWP.

112.   During the same visit, the Banfield staff enrolled Plaintiff in an active prevention OWP for her dog Titan by charging her credit card.  Other than the brochure, she does not believe that Banfield provided an OWP agreement prior to enrollment.  Plaintiff believes she was charged $45.95 for the initial membership fee plus $39.95 for the monthly OWP service fee.

113.   At the initial visit, the Banfield staff took a quick look at Titan, gave him a vaccine shot, and sent him home with Plaintiff.  Titan got violently ill from the Banfield vaccine shot and Plaintiff needed to bring Titan back the next day.  Banfield gave Titan another shot and an antibiotic, charging Plaintiff over $100 for both.

114.   Banfield provided limited services to Plaintiff's dog during the OWP year 2012.  On or about October 19, 2012, Plaintiff dropped off Titan in the morning at Banfield for a scheduled neutering and a dental cleaning.  When she came in the early afternoon for her dog, Plaintiff was informed that her dog was having trouble waking up from the anesthesia for the surgery.  Banfield also extracted several teeth during the teeth cleaning (at an additional cost to Plaintiff).

115.   After several hours, Titan did wake up.  Before leaving, however, Plaintiff informed the staff that she did not want to continue with any other services from Banfield and to cancel her wellness plan.

116.   Since October 19, 2012, Banfield no longer provided Plaintiff with pet care services for Titan.  Nonetheless, Banfield continued to charge Plaintiff $39.95 per month throughout the remainder of 2012 *and throughout 2013*.  In December 2013, Plaintiff notified Banfield in writing that she had cancelled her OWP in October 2012.

43

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

117.   Plaintiff owns other pets, but in light of the excessive costs that she incurred in connection with the OWP for Titan, and the service shortfalls under the OWP, Plaintiff did not sign her other pets up with Banfield.

**F.     Plaintiffs and Members of the Class Suffered Injury as a Result of Banfield's Misconduct.**

118.   Based on Banfield's deceptive marketing and unfair sales tactics, Plaintiffs purchased Banfield OWPs, and they paid for pet care products and services thereunder believing that they would receive the savings, discounts, products and services as represented by Banfield.

119.   The OWPs did not conform, however, to Banfield's representations because, in fact, purchase of the pet care products and services thereunder did not provide the promised minimum savings and discounts.  Furthermore, Banfield induced Plaintiffs and other OWP clients to purchase additional pet care products and services that were not needed and/or that were provided at inflated prices.

120.   Plaintiffs and members of the Class paid more for Banfield's OWPs, and for the pet care products and services purchased thereunder, than they otherwise would have paid had they not been misled by Banfield's false and misleading representations and material omissions, and/or had they not been induced by Banfield's unfair sales tactics to purchase additional pet care products and services.

121.   For these reasons, Banfield's OWPs and the pet care products and services purchased thereunder were worth less to Plaintiffs and members of the Class than what they otherwise would have paid.

122.   Based on the false statements, misrepresentations, material omissions, and unfair sales tactics described herein, Plaintiffs and members of the Class were induced to and did purchase OWPs, and additional pet care products and services thereunder, instead of saving their money or purchasing competing pet care products or services.

44

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

123.   Instead of receiving OWPs that provided the promised minimum savings on comprehensive preventive pet care, Plaintiffs and members of the Class received restrictive plans that did not provide the advertised savings and discounts, that induced clients to pay for unprovided and/or unneeded pet care products and services, and that locked them into costly, year-long, automatically-renewing, purchasing commitments without full disclosure of relevant terms in advance of enrollment.

124.   Plaintiffs and members of the Class lost money as a result of Banfield's deception and unfair business practices insofar as: (i) OWP clients were denied savings and discounts advertised under the plans; (ii) OWP clients were induced to pay additional monies for unprovided and/or unneeded pet care products or services; and (iii) OWP clients incurred other charges for covered services in addition to OWP membership fees.

125.   Plaintiffs and members of the Class altered their position to their detriment and suffered injuries that include overpayments of initial one-time OWP membership fees, overpayments of monthly OWP membership fees, losses of advertised minimum savings and discounts, payments for unprovided and/or unneeded pet care products or services, and supplemental service charges assessed on top of OWP membership fees.

## V.   CLASS ACTION ALLEGATIONS

126.   Plaintiffs seek certification of a Class defined as follows:

> All consumers in California who: (i) purchased or renewed any Optimum Wellness Plan from a Banfield Pet Hospital (ii) for personal, family, or household purposes (iii) at any time during the four year period preceding the filing of the original complaint ("The Class"). Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also, excluded from the Class are any federal, state or local governmental entities, any judicial

45

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

127.  Plaintiffs do not know the exact number of Class members at the present time.  However, due to the nature of the trade and commerce involved, there appear to be thousands of Class members such that joinder of all Class members is impracticable.

128.  The Class is ascertainable through Defendant's business records and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions.

129.  There are questions of law and fact common to the Class.  Defendant's marketing practices were supplied uniformly to Class members who were similarly affected by having purchased Banfield OWPs and other per care products or services under the OWPs.

130.  Plaintiffs assert claims that are typical of the Class.  Plaintiffs and all Class members have been subjected to the same wrongful conduct because they all have purchased and/or renewed OWPs, which Banfield misrepresented as providing minimum savings and discounts and which Banfield used to upsell additional pet care products and services to achieve an Average Patient Charge.  As a result, and like other members of the Class, Plaintiffs purchased and/or renewed OWPs from Banfield, and pet care products and services sold thereunder, which they otherwise would not have paid for, and/or for which they otherwise would have paid less.

131.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

132.  Class certification is appropriate because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1      133.   Class certification is also appropriate because common questions of law

2   and fact substantially predominate over any questions that may affect only individual

3   members of the Class, including, *inter alia*, the following:

4         a.   Whether Defendant misrepresented or omitted
          material facts in connection with the marketing and
5             sale of OWPs;

6         b.   Whether Defendant represented that its OWPs have
          characteristics, benefits, uses or qualities that they do
7             not have;

8         c.   Whether Defendant made misleading statements of
          fact about the amount of savings and discounts
9             associated with its OWPs and/or the pet care
          products and services sold thereunder;
10

11         d.   Whether Defendant represented that consumers will
          receive savings or discounts for purchasing OWPs,
12             or the products or services thereunder, when the
          advertised savings were contingent on events to
13             occur subsequent to the purchase;

14         e.   Whether Defendant's misrepresentations and/or
          nondisclosures would be material to a reasonable
15             consumer;

16         f.   Whether Defendant's misrepresentations and/or
          nondisclosures were likely to deceive a reasonable
17             consumer in violation of the UCL;

18         g.   Whether Defendant's misrepresentations and/or
          nondisclosures constitute an unlawful business
19             practice in violation of the UCL;

20         h.   Whether Defendant's misrepresentations and/or
          nondisclosures constitute an unfair business practice
21             in violation of the UCL;

22         i.   Whether Defendant's practice of directing vets and
          staff to achieve an Average Patient Charge for OWP
23             clients constitutes an unfair, unlawful, or deceptive
          practice under the UCL;

24         j.   Whether Defendant's upselling of additional pet care
          products and services constitutes an unfair, unlawful,
25             or deceptive practice under the UCL;

26         k.   Whether Defendant intentionally misrepresented the
          savings and discounts available under the OWPs;

27

28                           47

l.   Whether Defendant knowingly failed to disclose material facts limiting the scope and/or value of its OWPs;

m.   Whether the challenged practices harmed Plaintiffs and members of the Class; and

n.   Whether Plaintiffs and members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

134.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable.  Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

135.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FALSE ADVERTSING LAW
(CAL. BUS. & PROF CODE §§ 17500, *et seq.*)

136.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

137.   California Business & Professions Code §§ 17500, *et. seq.* (the "FAL") broadly proscribes deceptive advertising in this State.  Section 17500 makes it unlawful for any corporation intending to sell products or perform services to make

48

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1   any statement in advertising those products or services concerning any circumstance

2   or matter of fact connected with the proposed performance or disposition thereof,

3   which is untrue or misleading, and which is known, or which by the exercise of

4   reasonable care should be known, to be untrue or misleading, or not to sell those

5   products or services as advertised at the price stated therein, or as so advertised.

6       138.   In this case, Banfield has violated Sections 17500.  Banfield is a

7   corporation that intends to and does sell pet care products and perform pet care

8   services for California consumers.  Banfield makes statements in advertising those

9   products and services concerning the savings and discounts provided to clients who

10  pay for Banfield's OWPs, and the nature of the pet care products and services that

11  Banfield provides under the OWPs.  These statements are made orally by Banfield

12  representatives, in writing in standard print brochures with price sheets disseminated

13  at Banfield outlets in PetSmart stores, in invoices provided at pet care visits, and

14  online at Banfield's website.  The statements are false or misleading, and are known,

15  or by the exercise of reasonable care should be known, to be false or misleading, by

16  Banfield.  Indeed, Plaintiffs are informed and believe that Banfield is aware that

17  OWP clients do not in fact receive the promised savings and discounts on pet care

18  products and services under the OWPs.

19      139.   Contrary to Banfield's representations, Banfield does not ensure any

20  minimum annual savings.  The promised savings and discounts are based not only on

21  preventive pet care services actually paid for, but also on the OWP client's purchase

22  of pet care products and services from Banfield that are not provided and/or not

23  needed.  The accumulated savings reflected on the standard invoicing do not fairly

24  represent the actual savings, if any, to the OWP client.  Moreover, the underlying

25  retail pricing scheme is inflated and packed with additional charges that OWP clients

26  should not have incurred.  In short, Banfield does not actually sell the OWPs, or the

27  pet care products and services thereunder, as advertised or at the advertised prices.

28

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

140.   In addition, Section 17509 of the FAL provides that any advertisement soliciting the purchase of a service that requires, as a condition of sale, the purchase of a different service shall conspicuously disclose in the advertisement the price of all those services.  Banfield's advertisements solicit the purchase of OWPs.  As a purported condition of the purchase of any OWP, the consumer must pay retail charges for each individual pet care service used to the date of cancellation (unless the client pays for a full year of OWP services).  Banfield has violated Section 17509 by failing to disclose in its advertisements the retail price of each individual service covered by the OWP.

141.   Section 17535 effectively provides that the Court may enjoin any corporation or other person who violates the FAL, and may make such orders or judgments as may be necessary to prevent the use of such practices, or which may be necessary to restore to any person in interest any money or property which may have been acquired by means of such practices.  An FAL claim may be prosecuted by any person who has suffered injury in fact and has lost money or property as a result of a violation of the FAL. The action may be prosecuted on a representative basis when it meets the traditional class action requirements.

142.   Plaintiffs and the Class have suffered injury in fact and lost money or property as a result of Banfield's violations of the FAL because:  (a) they paid more for OWPs due to the false representations and material omissions about OWP savings, discounts, products, and services; (b) they would not have purchased the OWPs on the same terms, and/or all of the pet care products and services thereunder, if the true facts concerning the OWPs and Banfield's unfair sales tactics had been known; and (c) the OWPs did not provide the advertised minimum savings, discounts and benefits that were promised.

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

143.   As a result of these violations, Banfield has caused and continues to cause damage to Plaintiffs and members of the Class and, if not stopped, will continue to harm them.

144.   Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such deceptive advertising.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
(CAL. CIV. CODE § 1750, *et seq.*)

145.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

146.   Defendant Banfield Pet Hospital is a "person" under Cal. Civ. Code § 1761(c).

147.   Plaintiffs are  "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased OWPs sold by Banfield for preventive pet care services and purchased pet care products and services from Banfield subject to OWP savings and discounts.

148.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or *services* have sponsorship, approval, *characteristic*, ingredients, *uses, benefits*, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Banfield violated this provision by misrepresenting that its OWPs provided savings and discounts on pet care products and services, which savings and discounts were not provided or were materially overstated.  Banfield also violated this provision by using OWPs as a tool for upselling costly additional pet care products and services.

149.   Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."  Banfield violated this provision by

51

1    intentionally and deceptively advertising that its OWPs provided savings and

2    discounts on pet care products and services, which savings and discounts were not

3    provided or were materially overstated.

4        150.   Cal. Civ. Code § 1770(a)(13) prohibits "[m]aking false or misleading

5    statements of fact concerning reasons for, existence of, or amounts of price

6    reductions." Banfield violated this provision by making false or misleading

7    statements of fact concerning the existence of OWP savings and overstating the

8    amount of savings and discounts, if any, on pet care products and services under its

9    OWPs.

10       151.   Cal. Civ. Code § 1770(a)(17) prohibits "[r]epresenting that the

11   consumer will receive a rebate, discount, or other economic benefit, if the earning of

12   the benefit is contingent on an event to occur subsequent to the consummation of the

13   transaction." Banfield violated this provision by representing that OWP purchasers

14   will receive savings or discounts, when the earning of the savings and discounts were

15   contingent on events to occur subsequent to the OWP purchase. Among other

16   things, the advertised savings and discounts were contingent on the consumer's non-

17   cancellation of the OWP for a full year, veterinary recommendations of bundled

18   services, and the consumer's actual need for and use of those services.

19       152.   Plaintiffs and the Class lost money or property as a result of these

20   violations because: (a) they paid more for OWPs due to the misrepresentations about

21   OWP savings, discounts, products, and services; (b) they would not have purchased

22   the OWPs on the same terms and/or all of the pet care products and services

23   thereunder if the true facts concerning the OWPs and Banfield's unfair sales tactics

24   had been known; and (c) the OWPs did not provide the advertised savings, discounts,

25   and benefits as promised.

26

27

28

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

153.   As a result of these violations, Banfield has caused and continues to cause actual injury to Plaintiffs and members of the Class and, if not stopped, will continue to harm them.

154.   In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and members of the Class seek injunctive and equitable relief for Banfield's violations of the CLRA.

155.   In addition, having mailed appropriate notice and demand in accordance with Cal. Civil Code § 1782(a) & (d), Plaintiffs hereby amends the original Complaint to include a request for damages.  In particular, pursuant to and in accordance with §1782, Plaintiff Pero sent written notice to Defendant via certified mail, received by Defendant on November 7, 2013, addressing the alleged violations under CLRA §1770 as detailed in the original Complaint (based on the deceptive marketing and sale of OWPs and pet care products and services thereunder), demanding that Defendant reimburse Plaintiff and class members for the alleged violations of §1770, and demanding that Defendant notify class members of the lawsuit.  Within 30 days of receiving Plaintiff's notice, Defendant failed to make the appropriate reimbursements or other remedies requested by Plaintiff, and Defendant failed to agree to give the requested remedies within a reasonable time.  Furthermore, Defendant failed to identify similarly-situated consumers who purchased OWPs; Defendant failed to notify such consumers that upon their request Defendant shall make the appropriate reimbursement or other remedy; Defendant did not give the reimbursements or notice requested on behalf of such consumers, and Defendant did not offer to do so in a reasonable time.  Further, Defendant did not cease from engaging in the alleged CLRA violations, and Defendant did not agree to do so in a reasonable time.  Accordingly, Plaintiffs now amends their Complaint to include a request for damages under the CLRA, and Plaintiffs seek all relief authorized under Civil Code § 1780, including compensatory and punitive damages, and attorneys' fees and costs, as requested more fully in the Prayer for Relief.

53

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1    156.   Plaintiffs include an affidavit with this Complaint reflecting that venue

2    in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code

3    § 1780(d) in federal court.

4
### THIRD CAUSE OF ACTION

5
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
6    (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

7    157.   Plaintiffs reallege and incorporate by reference all paragraphs alleged

8    herein.

9    158.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair, or

10   fraudulent business act or practice."  Banfield has engaged in unlawful, and unfair,

11   and fraudulent business acts and practices in violation of the UCL.

12   159.   Banfield has violated the unlawful prong by its violations of the FAL

13   and CLRA described above.

14   160.   Banfield has violated the unfair prong of section 17200 because the acts

15   and practices set forth in the Complaint—including false advertising and unfair and

16   coercive upselling—offend established public policy.  The harm that these acts and

17   practices cause to pet care consumers greatly outweighs any benefits associated with

18   them.  Banfield's conduct has also impaired competition within the market for

19   preventive pet care services and has stopped Plaintiffs from making fully informed

20   decisions about whether to purchase, renew, and retain OWPs, whether to purchase

21   additional pet care products and services as an OWP client, and/or what price to pay

22   for such products and services.

23   161.   Banfield has violated the fraudulent prong of section 17200 because its

24   misrepresentations and material omissions about OWP savings, discounts, products

25   and services, and the unfair sales tactics used to sell additional pet care products and

26   services under OWPs (as set forth in this First Amended Class Action Complaint),

27

28                                              54

1  were likely to deceive a reasonable consumer and the true facts would be material to

2  a reasonable consumer.

3       162.   Plaintiffs have suffered injury in fact, including the loss of money or

4  property, as a result of Banfield's unlawful, unfair, and/or deceptive practices.  As

5  set forth more fully above, in purchasing and renewing Banfield OWPs and in

6  purchasing pet care products and services thereunder, Plaintiffs relied on the

7  misrepresentations and omissions of Banfield.  Had they known that Banfield OWPs

8  do not provide the advertised savings and discounts, or that they would be induced to

9  purchase additional pet care products and services as an OWP client and via unfair

10  sales tactics, they would not have purchased and/or renewed the OWPs that they

11  purchased and renewed, and/or they would not have paid as much for the OWPs or

12  the products and services thereunder.

13       163.   All of the wrongful conduct alleged herein occurred, and continues to

14  occur, in the conduct of Banfield's business.  Banfield's wrongful conduct is part of

15  a pattern or generalized course of conduct that is still perpetuated and repeated

16  throughout the State of California.

17       164.   Plaintiffs request that this Court enter such orders or judgments as may

18  be necessary to enjoin Banfield from continuing its unlawful, deceptive, and/or

19  unfair business practices and to restore to Plaintiffs and members of the Class any

20  money that Banfield acquired by unfair competition, as provided in Cal. Bus. & Prof.

21  Code § 17203, and for such other relief set forth below.

22  **FOURTH CAUSE OF ACTION**

23  **FRAUD BY CONCEALMENT**

24       165.   Plaintiffs reallege and incorporate by reference all paragraphs alleged

25  herein.

26       166.   As set forth above, Banfield concealed and omitted material facts

27  concerning the true nature, pricing, and value of its OWPs and the pet care products

28

55

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

and services sold thereunder, the nature of the tactics used to sell OWPs, and the true amount of limited savings and discounts, if any, available under the OWPs (as set forth more fully above).  Banfield had a duty to make these disclosures based on its superior knowledge of its products, services, and pricing scheme, its status as a pet care hospital, and its affirmative misrepresentations about the advertised savings, discounts, products, and services.

167.   Banfield concealed and omitted these material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase, renew, and retain Banfield OWPs and to purchase pet care products and services offered thereunder.

168.   Plaintiffs and the Class were unaware of all of the concealed and omitted material facts described above at the time of their purchases.  If they had known such facts at the time of their purchases, Plaintiffs and the Class woud not have purchased and/or renewed the OWPs, or purchased the pet care products and services thereunder, and/or they would not have paid as much therefore as they did.

169.   As a result of Banfield's concealment and omission of material facts, Plaintiffs and the Class sustained damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

170.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

171.   Banfield materially and intentionally misrepresented the savings, discounts, pricing, products, and services to be enjoyed by consumers under the OWPs, as alleged more fully above.

172.   Banfield's misrepresentations about the OWPs, and the the savings, discounts, pricing, products, and services thereunder, were intended to influence the

56

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

purchasing decisions of Plaintiffs and members of the Class, who justifiably relied upon Banfield's misrepresentations as set forth above.

173.   Defendant's misrepresentations caused Plaintiffs and the Class to purchase and/or renew OWPs, and to pay for pet care products and services thereunder, that they would not otherwise have paid for, and/or at prices above what they otherwise would have paid.

174.   As a result of Banfield's intentional misprepresentations, Plaintiffs and the Class sustained damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant the following relief:

A.   Determine that this action may be maintained as a Class action with respect to the Class identified herein and certify it as such under Rules 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiffs as Class Representatives and their counsel as Class Counsel;

B.   Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful, unfair and/or deceptive;

C.   Enjoin Defendant from continuing the deceptive marketing and unfair business practices alleged herein;

D.   Notify all Class members about the true limitations on savings and discounts under Banfield's OWPs;

E.   Award Plaintiffs and the Class restitution of all monies paid to Defendant as a result of unlawful, deceptive, and/or unfair business practices;

F.   Award Plaintiffs and the Class actual, compensatory damages, as proven at trial;

57

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1    G.    Award Plaintiffs and the Class exemplary damages in such amount as

2 proven at trial;

3    H.    Award Plaintiffs and the Class reasonable attorneys' fees, costs, and

4 pre- and post-judgment interest; and

5    I.    Award Plaintiffs and the Class such other further and different relief as

6 the nature of the case may require or as may be determined to be just, equitable, and

7 proper by this Court.

8                              **JURY TRIAL DEMAND**

9    Plaintiffs, by counsel, request a trial by jury on their legal claims, as set forth

10 herein.

11

12 DATED: December 18, 2013          **HAGENS BERMAN SOBOL**
                                    **SHAPIRO LLP**
13

14                                  By *Lee M. Gordon* /eth
15                                     Lee M. Gordon (174168)
                                       301 N. Lake Ave., Suite 203
16                                     Pasadena, CA 91101
                                       Tel.: (213) 330-7150
17                                     Fax: (213) 330-7152
                                       lee@hbsslaw.com
18

19                                  Steve W. Berman
                                    HAGENS BERMAN SOBOL SHAPIRO
20                                  LLP
                                    1918 Eighth Avenue, Suite 3300
21                                  Seattle, WA 98101
                                    Telephone:  (206) 623-7292
22                                  steve@hbsslaw.com

23                                  *Attorneys for Plaintiffs and the Proposed*
                                    *Class*
24

25

26

27

28

58

FIRST AMENDED CLASS
ACTION COMPLAINT
SACV13-01749 JLS (ANx)

1   STEVE W. BERMAN (*pro hac vice pending*)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   1918 Eighth Avenue, Suite 3300
    Seattle, WA 98101
3   Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
4   steve@hbsslaw.com

5   LEE M. GORDON (SBN 174168)
    HAGENS BERMAN SOBOL
6   SHAPIRO LLP
    301 N. Lake Ave., Suite 203
7   Pasadena, CA 91101
    Tel.: (213) 330-7150
8   Fax: (213) 330-7152
    lee@hbsslaw.com

9

10   *Attorneys for Plaintiff*
    *and the Proposed Class*

11

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15   Gregory T. Pero, an individual, *et al.*; on
    behalf of himself and all others similarly
16   situated,

17        Plaintiff,           **DECLARATION RE CLRA**
                              **VENUE**
18        v.

19   Banfield Pet Hospital, a Delaware
20   corporation,

21        Defendant.

22

23

24

25

26

27

28

1    G.    Award Plaintiffs and the Class exemplary damages in such amount as

2  proven at trial;

3    H.    Award Plaintiffs and the Class reasonable attorneys' fees, costs, and

4  pre- and post-judgment interest; and

5    I.    Award Plaintiffs and the Class such other further and different relief as

6  the nature of the case may require or as may be determined to be just, equitable, and

7  proper by this Court.

8                        **JURY TRIAL DEMAND**

9        Plaintiffs, by counsel, request a trial by jury on their legal claims, as set forth

10  herein.

11

12  DATED: December 18, 2013          **HAGENS BERMAN SOBOL**
                                      **SHAPIRO LLP**
13

14                                    By _Lee M. Gordon / ctb_
15                                      Lee M. Gordon (174168)
                                        301 N. Lake Ave., Suite 203
16                                      Pasadena, CA 91101
                                        Tel.: (213) 330-7150
17                                      Fax: (213) 330-7152
                                        lee@hbsslaw.com
18

19                                      Steve W. Berman
                                        HAGENS BERMAN SOBOL SHAPIRO
20                                      LLP
                                        1918 Eighth Avenue, Suite 3300
21                                      Seattle, WA 98101
                                        Telephone: (206) 623-7292
22                                      steve@hbsslaw.com

23                                      *Attorneys for Plaintiffs and the Proposed*
                                        *Class*
24

25

26

27

28

                                    58

## DECLARATION OF SERVICE

I, the undersigned, declare:

    1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 301 N. Lake Ave., Suite 203, Pasadena, California 91101.

    2. That on December 18, 2013, declarant served **FIRST AMENDED CLASS ACTION COMPLAINT** to the parties as indicated on the attached Service List.

    3. That there is a regular communication by mail between the place of mailing and the places so addressed.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of December, 2013, at Pasadena, California.

Andy Katz

## SERVICE LIST

GREGORY T. PERO  and JEANINE N. METHENY, *et al.*

v.

MEDICAL MANAGEMENT INTERNATIONAL, Inc.,
d.b.a. Banfield Pet Hospital, a Delaware corporation,

Case No. SACV13-01749 JLS (ANx)
Central District of California

### ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| Lee M. Gordon<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>301 North Lake Avenue, Suite 203<br>Pasadena, CA 91101<br>Telephone: 213-330-7150<br>lee@hbsslaw.com<br>*(Via email)* | Steve W. Berman<br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA  98101<br>Telephone:  (206) 623-7292<br>steve@hbsslaw.com<br>*(Via email)* |

### ATTORNEYS FOR DEFENDANTS

| | |
|---|---|
| Mara W Murphy<br>**WILLIAMS & CONNOLLY**<br>725 12th St NW<br>Washington, DC 20005-5901<br>Telephone: 202-434-5000<br>mmurphy@wc.com<br>*(Via email)* | |