UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  SACV 13-1749 JLS (ANx)            Date:  April 24, 2014
Title: Gregory Pero, et al. v. Medical Management International, Inc.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                             Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 15)**

      Before the Court is a Motion to Dismiss filed by Defendant Medical Management International, Inc., d.b.a Banfield Pet Hospital.  (Mot., Doc. 15.)  Plaintiffs Gregory Pero and Jeanine Metheny filed an Opposition, and Defendants replied. (Opp'n, Doc. 18; Reply, Doc. 20.)  Having read the parties' papers, heard oral argument, and taken the matter under submission, the Court GRANTS Defendant's Motion.

I.    **Background**

      Defendant Banfield operates pet care outlets in PetSmart stores around the country.  (First Amended Complaint ("FAC") ¶ 2, Doc. 12.)[1]  At these outlets, Banfield sells Optimum Wellness Plans ("OWPs").  (FAC ¶¶ 3, 8.)  OWPs do not provide insurance, but instead promise savings and discounts on pet care services and related pet care products in return for a one-time membership fee and monthly payments.  (*Id.* ¶¶ 3-4, 11.)  Banfield advertises its OWPs using brochures that identify the pet care services provided for free under each OWP, such as office visits, physical exams, and vaccines. (*Id.* ¶ 38.)  Different plans provide different services.  (*Id.* ¶¶ 41, 48.)  At the bottom of the page listing some of those services is the following statement: "Please refer to the OWP agreement for a detailed list of services included in your plan each year."  (RJN

---

[1] When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  SACV 13-1749 JLS (ANx) | Date:  April 24, 2014 |

Title: Gregory Pero, et al. v. Medical Management International, Inc.

Exs. A-B, E, H, Doc. 16.)[2]  The OWPs also offer percentage discounts on certain services not provided under the plans.  (FAC ¶¶ 41, 48.)  The brochures state that "[u]nlike insurance, where you pay for coverage you may never use, Optimum Wellness Plans always provide the services you pay for."  (*Id.* ¶ 39 (emphasis omitted).)  The OWP brochures include price sheets that set forth the "Minimum Annual Savings" under each OWP.  (*Id.* ¶¶ 42-44, 49-50.)  The price sheets include a statement at the bottom reading, "[f]or complete terms and conditions of membership, please read the Optimum Wellness Plan Agreement."  (*Id.*; RJN Exs. C-D, F-G, I.)  Plaintiffs allege that as a matter of policy and practice, Banfield trains its sales representatives and sets up its computer systems to enroll customers in the OWPs before providing copies of the OWP agreements.  (FAC ¶ 76.)  Only after a client provides a credit card to be charged does Banfield provide the agreement.  (*Id.*)

　　　　Plaintiffs assert that the OWP brochures are false and misleading because "savings are conditional and contingent on future pet care services being provided and needed." (*Id.* ¶ 65.)  Banfield also allegedly "inflates the regular costs that it uses to calculate the purported savings and discounts under OWPs."  (*Id.* ¶ 65.)  Additionally, if an OWP is cancelled before the end of a plan year, Banfield "may retroactively impose its full retail fees to date or assess a full year's worth of OWP payments."  (*Id.* ¶ 75.)  Further, Banfield does not disclose that its staff are trained and directed to achieve an Average Patient Charge of over $100 per visit.  (*Id.* ¶ 86.)  Plaintiffs allege that the Average Patient Charge results in Banfield's employees "upselling . . . additional pet care products and services to OWP clients."  (*Id.* ¶ 14.)

　　　　Banfield also promotes the savings offered by OWPs on the invoices it sends to OWP clients.  (*Id.* ¶ 51.)  The standard invoice includes a "Regular Fee" and a "Your

---

[2] Defendant requests judicial notice of (1) the OWP brochures and pricing sheets included or excerpted in the FAC; (2) the canine OWP brochure and pricing sheet that was available at the Banfield location Plaintiff Metheny allegedly visited on January 4, 2012; and (3) copies of an OWP agreement signed by Plaintiff Pero and an OWP agreement signed by Plantiff Metheny. (RJN at 2, Exs. A-K.)  These documents are relied upon in the pleading (FAC ¶¶ 41-43, 48-50, 77, 97, 110, 112), and Plaintiffs "do not oppose" the request (Opp'n at 3).  The Court therefore GRANTS the request.  *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  SACV 13-1749 JLS (ANx)                                                       Date:  April 24, 2014
Title:  Gregory Pero, et al. v. Medical Management International, Inc.

Fee" column, as well as a dollar amount of discounts to date referred to as "lifetime savings."  (*Id.* (emphasis omitted).)  The first invoice to each OWP client lists membership fees under both the "Regular Fee" and "Your Fee" columns.  (*Id.* ¶ 53.)  The remaining invoices report savings as if no further membership fees were being charged.  (*Id.*)

Plaintiff Metheny purchased an OWP for her dog Titan in January 2012 after reviewing an OWP brochure.  (*Id.* ¶¶ 109-112.)  Metheny "does not believe that Banfield provided an OWP agreement prior to enrollment."  (*Id.* ¶ 112.)  Defendant has provided Metheny's OWP agreement for Titan.  (RJN Ex. K.)  The first page of Metheny's agreement provides that "[t]he following Pet health services are provided to Titan as directed by a Banfield Veterinarian," and then lists the services.  (*Id.* at 1.)  The agreement further states that the subscriber "agrees to pay [Banfield] the initial non-refundable membership fee and the annual or monthly installments stated above for the full term of this Agreement, including renewal terms, subject to the cancellation provisions on the second page of this Agreement."  (*Id.*)  Also on the bottom of the first page is Metheny's signature agreeing to the OWP and authorizing her credit or debit card to be charged.  (*Id.*)

Since 1997, Plaintiff Pero has purchased OWPs for his cats and dogs.  (FAC ¶¶ 89-103.)[3]  Sometime in 1997, Pero viewed an OWP brochure.  (FAC ¶ 89.)  In August 2009, Pero received a letter from Banfield informing him of the upcoming renewal of one of his OWPs.  (*Id.* ¶ 96.)  The letter stated that his OWP provided savings of more than 50%.  (*Id.*)  Pero also alleges that he saw OWP brochures and invoices at unspecified times "during the four year period preceding" November 5, 2013.  (*Id.* ¶ 108.)  Both Pero and Betheny allege that they would not have purchased OWPs had Banfield disclosed the "true nature and amount of the purported savings and discounts" and "the true facts about its upselling."  (*Id.* ¶ 31.)

---

[3] Defendants have also provided Pero's OWP agreement for his cat Emily.  (RJN Ex. J.)  The agreement is similar to Metheny's agreement.  (*See id.* at 1-2.)  The second page of the agreement is signed by Pero, and below the signature is a credit card authorization also signed by Pero.  (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 13-1749 JLS (ANx)                Date: April 24, 2014
Title: Gregory Pero, et al. v. Medical Management International, Inc.

On November 5, 2013, Plaintiffs filed this action. (Doc. 1.) In the FAC, Plaintiffs assert claims against Banfield for (1) violation of California's False Advertising Law ("FAL"); (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's Unfair Competition Law ("UCL"); (4) fraud by concealment; and (5) intentional misrepresentation. (*Id.* at 48-57.) Plaintiffs bring these claims on behalf of themselves and on behalf of a putative class of California consumers who purchased OWPs. (*Id.* ¶ 126.)

## II.     Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch*, 14 F.3d at 453-54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1749 JLS (ANx)                     Date:  April 24, 2014
Title:  Gregory Pero, et al. v. Medical Management International, Inc.

### III. Discussion

#### A. UCL, FAL, and CLRA

Plaintiffs assert that Banfield violated the UCL, FAL, and CLRA by engaging in false and misleading advertising. (FAC at 48-55.) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The FAL prohibits inducing the public to enter into an obligation through the dissemination of "untrue or misleading" statements. Cal. Bus. & Prof. Code § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). Under all three statutes, courts apply the "reasonable consumer" test, which requires a plaintiff to show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation marks omitted). *See also Harris v. Las Vegas Sands L.L.C.*, CV 12-10858 DMG FFMX, 2013 WL 5291142, *5 (C.D. Cal. Aug. 16, 2013) (applying reasonable consumer test to UCL, FAL, and CLRA claims).

Additionally, in order to assert a claim under the UCL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. As a result, "a [plaintiff] proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). The standing requirements under the FAL are identical. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011). The CLRA allows recovery by "[a]ny consumer who suffers any damage as a result of the use or employment by any person" of an unfair or deceptive business practice. Cal. Civ. Code § 1780(a). "Accordingly, plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 550 (Cal. Ct. App. 2007), *overruled in part on other grounds by Kwikset Corp.*, 51 Cal. 4th 310.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1749 JLS (ANx)                                    Date:  April 24, 2014
Title:  Gregory Pero, et al. v. Medical Management International, Inc.

Finally, Plaintiffs' UCL, FAL, and CLRA claims are based on allegations that Banfield engaged in fraudulent misrepresentations and omissions.  These averments sound in fraud, and must be pleaded with particularity under Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 853 (N.D. Cal. 2012) (applying Rule 9(b) to UCL, CLRA, and FAL claims based on allegedly false or misleading advertising). Under Rule 9(b), a plaintiff must explain "'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  In addition, a plaintiff must "set forth an explanation as to why [a] statement or omission complained of was false or misleading."  *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

Plaintiffs contend that Banfield's advertisements and business practices were misleading in six ways.  (Opp'n at 12-15, 24-25.)

### 1.  "Minimum Annual Savings"

Plaintiffs argue that Banfield deceptively advertises "Minimum Annual Savings" in its OWP brochures.  (*See* Opp'n at 12-13.)  According to Plaintiffs, "reasonable consumers would expect to receive at least the advertised minimum savings based on their use of pet care services actually provided during the plan year—not based on some hypothetical use of every service listed in the OWP agreement."  (*Id.* at 13.)  Plaintiffs are mistaken.  The brochures state "Minimum Annual Savings" figures as specific, fixed amounts.  (*See* FAC ¶¶ 42-44, 49-50.)  However, the savings achieved by a consumer under an OWP based on their actual use of the services provided by the OWP would be variable from consumer to consumer, and could not be determined in advance.   As a result, no reasonable consumer seeing a "Minimum Annual Savings" amount could reasonably believe the figure represented the amount he would save based on his actual use of the services provided by the OWP.

Moreover, "Minimum Annual Savings" amounts are listed in brochures stating that certain services are provided by the OWP, but that others are only available at a

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 13-1749 JLS (ANx) | Date: April 24, 2014 |
| Title: Gregory Pero, et al. v. Medical Management International, Inc. | |

discount. Given that context, a reasonable consumer would necessarily surmise that the "Minimum Annual Savings" amount represents the savings he would achieve if he used the services provided under the OWP, but not those additional services discounted, but not covered, under the OWP. Plaintiffs have not, therefore, adequately demonstrated that a reasonable consumer would likely be deceived by Banfield's advertisement of "Minimum Annual Savings."

### 2. California Civil Code § 1770(a)(17)

Plaintiffs contend that Banfield's advertising violates California Civil Code § 1770(a)(17) because the savings Banfield promises "are only a possibility." (Opp'n at 13.) Section 1770(a)(17) prohibits "[r]epresenting that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction." Cal. Civ. Code § 1770(a)(17). However, the fact that an OWP purchaser must use a covered service in order to realize savings on that service is not the sort of contingency contemplated by § 1770(a)(17). The provision was intended to prevent "concealment or deception by nondisclosure," and, specifically, to "prevent a situation where the consumer would 'be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and high quality product than the one advertised.'" *Kramer v. Intuit Inc.*, 121 Cal. App. 4th 574, 580 (2004) (quoting Assem. Com. on Judiciary, Rep. on Assem. Bill No. 292 (Sept. 30, 1970) 4 Assem. J. (1970 Reg. Sess.) p. 8466). Requiring that a service be used in order for the savings on that service to be realized is an obvious condition, and is not equivalent to requiring the purchase of an additional product.[4] Accordingly, the Court concludes that Plaintiffs have failed to plead a violation of § 1770(a)(17) on the grounds that the advertised savings "are only a possibility."

___

[4] To the extent Plaintiffs are arguing that the cancellation fee is a contingency upon which the savings depend, they are mistaken. The cancellation fee is a consequence of not following through on the purchase of the OWP by making monthly payments, not a further condition on receiving the advertised savings.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  SACV 13-1749 JLS (ANx)                                      Date:  April 24, 2014
Title:  Gregory Pero, et al. v. Medical Management International, Inc.

### 3. Invoicing

Plaintiffs argue that Banfield misrepresents OWP savings in its invoicing.  (Opp'n at 14.)  In the FAC, Plaintiffs allege that "[a]s a general practice, only the first invoice reflects membership fees being charged by Banfield—the remaining invoices falsely report savings as if there were no further membership fees being charged, when in fact, such fees were being automatically charged to the OWP client's credit card.  While the first invoice to each OWP client lists membership fees, it actually includes such fees in *both* the 'Regular Fee' and 'Your Fee' column."  (FAC ¶ 53.)  A consumer could reasonably be misled by these invoicing practices into believing he was saving more than he actually was under an OWP.  Plaintiffs have not, however, pleaded their invoicing allegations with particularity.  The most alleged in the FAC is that Plaintiff Pero saw "form invoices" at some point "during the four year period preceding" November 5, 2013.  (*Id.* ¶ 108.)  This allegation lacks particularity as to the when, what, and how of the fraud allegedly perpetrated on Plaintiffs.

### 4. Service Fees

Plaintiffs contend that Banfield fails to adequately disclose certain additional service fees charged to OWP customers.  (Opp'n at 14.)  In the FAC, Plaintiffs allege that "the OWP advertising . . . fails to disclose that Banfield charges additional service fees in conjunction with purportedly covered services."  (FAC ¶ 55.)  If these charges are assessed against both OWP customers and non-OWP customers, they would not affect the truth of the statements in the OWP brochures concerning the savings offered by OWPs.  Though not an issue of savings, a consumer could still reasonably be misled by a promise that a service is covered when, in fact, that service is not fully covered without the payment of additional fees.  Plaintiffs have not, however, pleaded their service fee allegations with particularity.  There is no indication of when or how either Plaintiff was misled into believing a service was covered when, in fact, that service was not fully covered.  There is also no indication of what document or advertisement was responsible for such a misrepresentation.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 13-1749 JLS (ANx) | Date: April 24, 2014 |
| Title: Gregory Pero, et al. v. Medical Management International, Inc. | |

### 5. Retail Pricing

Plaintiffs argue that Banfield obscures and suppresses its retail pricing in violation of California Business and Professions Code § 17509. (Opp'n at 15.) Specifically, Plaintiffs argue that, under § 17509, Banfield was required to disclose all its retail pricing because a consumer could end up paying those prices retroactively if the consumer cancelled his or her OWP before the end of a plan year. (*Id.*) Section 17509 provides that "[a]ny advertisement . . . soliciting the purchase . . . of a product or service, or any combination thereof, that requires, as a condition of sale, the purchase or lease of a different product or service, or any combination thereof, shall conspicuously disclose in the advertisement the price of all those products or services." Cal. Bus. & Prof. Code § 17509(a). Here, the cancellation fee at issue was not a condition of purchasing the OWP, but a consequence of cancelling the OWP and failing to make all the required payments. Accordingly, Plaintiffs have not alleged a violation of § 17509.

Plaintiffs also argue that "Banfield's retail pricing scheme is inflated . . . enabl[ing] Banfield to puff up OWP savings and discounts." (Opp'n at 15.) Plaintiffs do not allege, however, that Banfield's advertised savings are not calculated based on the prices actually charged to customers without an OWP. As a result, Plaintiffs have not alleged that the savings figures were anything but what a reasonable consumer would understand them to be: the amount a customer could save purchasing certain Banfield services with an OWP, rather than without one.

### 6. Average Patient Charge

Plaintiffs argue that Banfield's advertising is misleading because it fails to disclose that Banfield solicits an Average Patient Charge. (Opp'n at 24-25.)[5] According

---

[5] In their Opposition, Plaintiffs make clear that this is a deceptive advertising claim. (*See* Opp'n at 24-25 ("[Plainttiffs] would not have purchased and/or renewed their OWPs in the first place (or paid as much thereunder) if they had known about Banfield's unfair practice of soliciting an Average Patient Charge.").) This is, moreover, the only basis on which they could pursue a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1749 JLS (ANx)                       Date:  April 24, 2014
Title:  Gregory Pero, et al. v. Medical Management International, Inc.

to the FAC, Banfield's staff are trained and directed to achieve an Average Patient Charge of over $100 per visit.  (FAC ¶ 86.)  This results, Plaintiffs allege, in Banfield employees "upselling . . . additional pet care products and services to OWP clients," some of which are "unnecessary."  (*Id.* ¶¶ 14, 46.)

      In order for an omission to be actionable, it must be either "contrary to a representation actually made" or "a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc*., 144 Cal. App. 4th 824, 835 (2006).  *See also O'Shea v. Epson Am., Inc*., No. CV 09 -8063 PSG CWX, 2011 WL 3299936, *6 (C.D. Cal. July 29, 2011) (applying *Daugherty* to CLRA and UCL claims based on omissions). Here, Banfield's representations concerning OWP savings pertained, specifically, to the savings offered on those services provided by the OWPs.  That Banfield uses an Average Patient Charge to induce its employees to sell additional products and services not provided under OWPs is, therefore, not contrary to a representation in the OWP advertisements.  Plaintiffs' omission claim is therefore actionable only if Banfield had a duty to disclose the Average Patient Charge.

      "To allege a duty to disclose, a plaintiff must show that the defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact." *Apodaca v. Whirlpool Corp*., No. SACV 13-00725 JVS, 2013 WL 6477821, *6 (C.D. Cal. Nov. 8, 2013) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  Plaintiffs have not alleged the existence of a fiduciary relationship.  Plaintiffs must therefore establish that the Average Patient Charge was material.  "[A] fact is deemed material, and obligates an exclusively knowledgeable defendant to disclose it, if a reasonable [consumer] would deem it important in determining how to act in the transaction at issue." *Apodaca*, 2013 WL 6477821, *6 (quotation marks omitted) (alterations in original).  Plaintiffs allege that the Average Patient Charge results in Banfield's employees upselling products and services not covered under OWPs.  At most then, the Average Patient Charge bears on the decision of whether or not to buy those additional products and services, but not

---

claim based on the Average Patient Charge, as Plaintiffs have not sufficiently pleaded that they were ever the victims of upselling.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1749 JLS (ANx)                                    Date:  April 24, 2014

Title:  Gregory Pero, et al. v. Medical Management International, Inc.

whether to purchase the OWP itself.  Without an allegation plausibly connecting the Average Patient Charge with the purchase of an OWP, Banfield's alleged failure to disclose the Average Patient Charge is not an actionable material omission.

Additionally, there is no plausible allegation that Banfield encouraged its employees to achieve the Average Patient Charge by unfair or deceptive means.  The Average Patient Charge's only alleged effect was to encourage Banfield employees to sell more products and services.  A reasonable consumer would already assume that a company actively encourages its employees to sell its products and services.  On the facts alleged, the Average Patient Charge is not an important consideration for a reasonable consumer.  The Court therefore concludes that Plaintiffs have not adequately alleged that the failure to disclose the Average Patient Charge to OWP purchasers is actionable.

In sum, none of the alleged statements and omissions identified by Plaintiffs are sufficient to state a UCL, FAL, or CLRA claim with the required particularity.  Accordingly, Plaintiffs' UCL, FAL, and CLRA claims are dismissed without prejudice.

### B.  Fraud

Plaintiffs' fourth and fifth claims are for fraud.  (FAC at 55-56.)  In order to state a claim for fraud under California law, a plaintiff must plead: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage.  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).  In order to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  For the reasons described above, Plaintiffs have failed to plead any misrepresentations or omissions with particularity.  Accordingly, Plaintiffs' claims for fraud are dismissed without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  SACV 13-1749 JLS (ANx)                                              Date:  April 24, 2014

Title:  Gregory Pero, et al. v. Medical Management International, Inc.

**IV.     Conclusion**

      For the foregoing reasons, Defendant's Motion is GRANTED.  Plaintiffs' Complaint is dismissed without prejudice.  Any amended complaint must be filed within **21 days** of this Order.

      Initials of Preparer:  <u>enm</u>